# Exhibit B

11/11/2019 9:15 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 38399659
By: Nelson Cuero
Filed: 11/11/2019 9:15 PM

NO: _____

| | | |
|---|---|---|
| **BASIT MIAN, on behalf of himself and all others similarly situated,** | ) ) ) | **IN THE DISTRICT COURT OF** |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **HARRIS COUNTY, TEXAS** |
| **PROGRESSIVE COUNTY MUTUAL INSURANCE COMPANY, J.D. POWER and MITCHELL INTERNATIONAL, INC.,** | ) ) ) ) ) | **JUDICIAL DISTRICT _____** |
| **Defendants.** | ) | <u>**Jury Trial Demanded**</u> |

## <u>PLAINTIFF'S ORIGINAL PETITION</u>

Plaintiff, Basit Mian, on behalf of himself and all others similarly situated ("Plaintiff"), complains of Defendants, Progressive County Mutual Insurance Company ("Progressive"), J.D. Power ("J.D. Power"), and Mitchell International, Inc. ("Mitchell") (collectively, "Defendants"), and alleges:

## <u>DISCOVERY</u>

1.       The parties should conduct discovery under Level 2, Rule 190.3 of the Texas Rules of Civil Procedure.

## <u>PARTIES, JURISDICTION AND VENUE</u>

3.       Plaintiff, Basit Mian, is an adult citizen residing in Houston, Harris County, Texas.

4.       Plaintiff brings this action in his individual capacity and on behalf of the class of all other persons similarly situated in the state of Texas (the "Texas Class").

5.      Defendant Progressive is an automobile insurer which is licensed to do business in Texas and issues insurance policies in Harris County, Texas. Defendant Progressive is organized under the laws of the state of Texas with its principal place of business in Texas. Progressive issued an automobile liability insurance, including coverage for first-party total loss claims, to Plaintiff Mian, which was in force on the date of the total loss at issue. Defendant Progressive may be served with process by serving its registered agent for service of process, CT Corporation, 1999 Bryan Street, Suite 900, Dallas, TX 75201.

6.      Defendant J.D. Power is incorporated under the laws of the state of Delaware and has its principal place of business in Westlake, California.   Defendant J.D. Power may be served with process by serving its registered agent, CSC-Lawyers Incorporating Service, 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

7.      Defendant Mitchell is incorporated under the laws of the state of Delaware and has its principal place of business in San Diego, California.  Defendant Mitchell may be served with process by serving its registered agent, CT Corporation System, 1999 Bryan St., Ste 900, Dallas, TX 75201-3136.

8.      The amount in controversy exceeds the minimum jurisdictional limits of this Court.  This Court has jurisdiction under Tex. Civ. Prac. & Rem. Code § 37.003. Venue is proper in this Court because Harris County is the county in which the Plaintiff resides and is the county in which the events giving rise to the claim occurred.

## NATURE OF THE ACTION

9.      This Texas class action arises from Defendants' systemic and intentionally wrongful and improper scheme to under-value total losses involving the vehicles of Progressive first-party insureds.

10.      Through its auto insurance policy contracts, Progressive has agreed to provide, *inter alia*, collision coverage for losses resulting from damage to insureds' vehicles (the "Progressive Policy/Policies").   The Progressive Policy provides for adjustment and settlement of first-party total loss claims on the basis of actual cash value or replacement ("Actual Cash Value").

11.      Progressive has spent many tens of millions of dollars to market itself as a fair and honest insurance company. However, Progressive and its co-conspirators, J.D. Power and Mitchell, are not fair and honest in providing valuations to Progressive insureds whose vehicles have been involved in an accident and are determined to be a total  loss.

12.      As alleged hereafter, J.D. Power and Mitchell formed a joint partnership to provide total loss valuation reports to insurers such as Progressive.  J.D. Power and Mitchell call these reports Work Center Total Loss Vehicle Valuation Reports ("WCTL Reports").

13.      Typically, insurers contract with Mitchell to receive the WCTL Reports which are prepared by this joint partnership.

14.      Progressive has contracted with Mitchell to receive such WCTL Reports. Through this partnership and Mitchell's agreement with Progressive, Progressive, Mitchell, and J.D. Power have engaged in a scheme to artificially deflate the value of first-party total

loss claims in order to pay insureds substantially less than the actual pre-loss cash value of their total loss vehicles.

15.     Plaintiff and the putative Texas Class are Progressive Policy holders whose vehicles were determined by Progressive to be a total loss and who have been subject to the Progressive, J.D. Power, and Mitchell scheme to artificially deflate the value of, and under-pay, their total loss claims.

16.     When Progressive entered into the Policies at issue in this case with Plaintiff and the Texas Class members, Progressive knew, but failed to disclose to Plaintiff and the Texas Class, that the WCTL Reports would wrongfully under-value their total loss vehicles. Through this scheme, Progressive, J.D. Power, and Mitchell have engaged in unlawful conduct in violation of Texas law, common law and their respective contractual obligations, which have uniformly damaged Progressive insureds in Texas in a readily ascertainable dollar amount.

**GENERAL FACTUAL ALLEGATIONS**

A.     **Plaintiff's Progressive Policy and Plaintiff's Total Loss**

17.     Plaintiff Basit Mian was the owner of a 2012 Mazda CX-9 Grand Touring FWD (the "Vehicle").

18.     Progressive issued its Automobile Policy No. 62455056 (the "Mian Policy") to Plaintiff which insured the Vehicle. The Mian Policy was in effect in April 2019.   The Declarations page of the Mian Policy is attached as Exhibit A.

19.     Following an automobile accident on April 25, 2019, Progressive determined that Plaintiff's Vehicle was a total loss.

20. The terms of Progressive's Policy issued to Plaintiff are not individualized, unique or specific to Mr. Mian. The Mian Policy is the same standard form issued by Progressive to insureds throughout the state of Texas.

21. The Mian Policy required Progressive to pay the "actual cash value" of the total loss to the Vehicle under Section IV "Damage to Vehicle," including "Limits of Liability."

22. J.D. Power and Mitchell provided Progressive with a WCTL Report for Plaintiff's Vehicle on or about May 14, 2019 ("Plaintiff's Report").  A true and correct copy of Plaintiff's Report is attached and incorporated herein as Exhibit B.

23. As reflected by Plaintiff's Report, the WCTL Reports first calculate a purported base vehicle value by averaging the adjusted prices of the comparable vehicles ("Base Value").  The WCTL Report then makes purported adjustments for the "condition" of the vehicle ("Condition Adjustment"), prior damage, aftermarket parts, and refurbishment which are deducted from Base Value to calculate the "Market Value," as reflected in the WCTL Reports.  The great majority of WCTL Reports include a downward Condition Adjustment.

24. Plaintiff's Report purports to state a Base Value for his Vehicle in the amount of $10,437.84 and a Market Value of $8,364.60 after a negative or downward Condition Adjustment in the amount of $2,073.24 (before applying his deductible in the amount of $499.00).  The Market Value in Plaintiff's Report wrongly deprived Plaintiff of $2,073.24, based upon the downward Condition Adjustment, which is statistically invalid.

25. In addition, the Base Value from which the Condition Adjustment amount was deducted is also based on statistically invalid WCTL methodology, as explained in Section B

below.    Accordingly, the Actual Cash Value of Plaintiff's Vehicle was substantially and improperly understated as a result of the statistically invalid WCTL Report.

26.    Plaintiff's Report failed to properly value Plaintiff's Vehicle and did not properly pay the Actual Cash Value which Progressive owed to Plaintiff.

27.    As a direct result of statistically invalid WCTL Reports, Progressive has intentionally and materially underpaid the total loss claims of Plaintiff and the Texas Class members.

**B.    <u>The Mitchell and J.D. Power Partnership and WCTL Methodology</u>**

28.    Mitchell and J.D. Power entered into a joint partnership to provide WCTL Reports to insurers, including Progressive.

29.    The partnership between Mitchell and J.D. Power is described (the "WCTL Methodology") in each of the WCTL Reports as follows:

> WorkCenter Total Loss was designed and built in conjunction with J.D. Power's experts in data analysis and vehicle pricing and a highly trusted name among consumers. With years of experience in vehicle pricing, J.D. Power is a credible, third-party expert whose name provides consumer recognition and confidence. WCTL provides a consistent methodology across all vehicles and it includes valid comparable vehicles that most closely resemble the totaled vehicle and are similar to the vehicles a consumer would find in their own research.

Exhibit B at 9.

30.    Additionally, WCTL Reports specifically bear the names of both J.D. Power and Mitchell on the first page of each WCTL Report.

31.    Each WCTL Report contains a "Methodology Explanation" which is located on the last page of each WCTL Report.  See Exhibit B, Plaintiff's Report at 9.

32.     The WCTL Methodology assigns actual cash values for total loss vehicles in an amount that is significantly lower than those assigned by published and publicly available valuation models, such as NADA, Black Book, Red Book, and Kelly Bluebook.

33.     The WCTL Methodology is explained as a five-step process used to "produce accurate and easy-to -understand vehicle valuations."

34.     This five-step process includes:

Step 1 - Locate Comparable Vehicles

Step 2 - Adjust Comparable Vehicles

Step 3 - Calculate Base Vehicle Value

Step 4 - Calculate Loss Vehicle Adjustments

Step 5 - Calculate the Base Value

Exhibit B at 9 (the "WCTL Valuation").

35.     None of these steps, relating to comparable vehicles, making vehicle adjustments, and calculating base values, are based on statistically valid methodologies, algorithms, values or computations. Each step is, in fact, statistically invalid and does not result in a proper valuation for total loss vehicles in Texas.

36.     Specifically, the WCTL Methodology for identifying comparable vehicles and for making purported "equating" adjustments for equipment, options and mileage is statistically invalid.  (*See* Steps 1 and 2 which result in "Base Vehicle Value" at Step 3).

37.     The Market Values in the WCTL Valuations are known by Progressive to be regularly, materially, and substantially lower than the values of actual comparable vehicles

and are used to deny insureds, such as Plaintiff and the Texas Class, a proper cash value amount sufficient for its insureds to purchase a comparable replacement vehicle.

38.     The WCTL Methodology for making downward Condition Adjustments, which is a major aspect of the fraudulent scheme to under-value total losses, and the other "Vehicle Adjustments" are statistically invalid.  (*See* Step 4 above).

39.     Specifically, the dollar amounts assigned to Condition Adjustments in the WCTL Reports are wholly arbitrary and are not based on any statistical, objective, valid, or verifiable data. Accordingly, all such downward Condition Adjustments are improper in all respects and should be disregarded in properly valuing a Progressive insured's total loss vehicle.

40.     The intended and wrongful result of the five steps and sub-steps included in the Progressive Policy is that total loss vehicles are undervalued, and Progressive insureds' total loss claims are underpaid. This underpayment is a detriment to Progressive insureds, including Plaintiff and the Texas Class, and a benefit to Defendants. Rather than paying Plaintiff and the Texas Class members the proper sums of money for their total loss vehicles, Progressive has retained significant funds in the millions of dollars by underpaying Plaintiff and the Texas Class members for the value of their total loss vehicles.

41.     The WCTL Reports routinely provide Progressive total loss vehicle values which are *not intended* to yield an appropriate Actual Cash Value for Plaintiff's Vehicle or comparable vehicles, but are calculated to yield a substantially lesser and improper amount.

42.     The majority of Progressive's first-party total loss claims in Texas are settled on the basis of the WCTL Valuations.

### C.     Progressive's Use of the Unlawful WCTL Valuations

43.     Progressive contracted with Mitchell to receive the WCTL Reports prepared by the J.D. Power/Mitchell partnership.

44.     Mitchell provided Progressive with WCTL Reports for the total loss vehicles of the Plaintiff and the Texas Class.

45.     Progressive has a regular practice of knowingly and falsely informing insureds that the WCTL Reports properly establish the Actual Cash Value of their vehicles and provide the basis for proper payment of total loss claims under Progressive Policies in Texas.

46.     Progressive has the regular and systemic claims practice of demanding that insureds settle total loss claims based upon the WCTL Reports and refusing to negotiate the Market Values in the WCTL Reports with the insureds.

47.     Progressive has actual knowledge that the WCTL Methodology is statistically invalid and unlawful.

48.     Progressive has suppressed and concealed material facts relating to WCTL's market valuation system and its pre-existing scheme and conspiracy with J.D. Power and Mitchell to intentionally undervalue total loss claims, including those of Plaintiff and the Texas Class. Specifically, Progressive concealed from Plaintiff that its purported total loss valuations were based upon the statistically invalid and unlawful WCTL Methodology.

49.     Plaintiff and the Texas Class members have been damaged by Progressive's systemic underpayment of total loss claims.  This underpayment results from Progressive's

intentional failure to fairly and properly determine the Actual Cash Value and its knowingly improper downward Condition Adjustments.

50.     Progressive has knowingly and intentionally acted in bad faith towards its Texas insureds in regularly and routinely utilizing WCTL Reports to adjust total loss claims.

### D.     Guidebook Values

51.     Other entities involved in the automobile business, such as new and used car dealers, also banks and other lending institutions, have *never* used WCTL Reports as a basis for determining a fair valuation or Actual Cash Value of used vehicles.

52.     Such entities have historically used industry-recognized guidebooks as sources for proper used vehicle valuation ("Guidebooks").  These Guidebooks include NADA, Kelly Blue Book and Black Book.  These Guidebooks are a proper source for determining Actual Cash Value.

53.     Historically, insurers also used Guidebooks for the purpose of determining proper valuations of total loss vehicles and Actual Cash Value.  Indeed, many insurers continue to use the Guidebooks to determine Actual Cash Value when determining whether a vehicle can be repaired or must be declared a total loss.

54.     For example, insurers typically declare a vehicle to be a total loss if the estimated repair costs exceed either the value of the vehicle or a percentage, such as 80%, of the pre-loss vehicle valuation.

55.     It is typically in the insurer's best interest to establish a higher value of the vehicle for this purpose, so that the cost of repair is a smaller percentage of the pre-crash vehicle valuation.

10

56. However, a number of years ago insurers including Progressive determined that they could save substantial amounts of money by using third-party valuations prepared by either J.D. Power/Mitchell or another third-party valuation company, CCC Information Services ("CCC").

57. Accordingly, in the last twenty years, many insurers have adopted the regular practice of using WCTL or CCC valuations of total loss vehicles and disregarding the historically recognized Guidebooks as a source of valuation, to improperly save millions of dollars in adjusting total loss claims.

58. The WCTL Reports are not used or recognized by any other "player" in the automobile industry, including dealers and lending institutions.

### E.    Progressive Has Waived and is Estopped to Assert the Appraisal Provision

59. Progressive's Preexisting Appraisal Scheme:  During the relevant period of time, Progressive had, and continues to have, a standard practice of refusing to negotiate the Base Value and "Market Value" as reflected in the WCTL Reports unless the WCTL Report has, for example, omitted an option.  Specifically, Progressive has a regular practice of refusing to negotiate in good faith with respect to comparable vehicles, mileage adjustments for comparable vehicles, condition adjustments to the specific total loss vehicle, or comparable vehicle condition adjustments.  Specifically, Progressive typically and routinely will not negotiate either the Base Vehicle Value or Market Values of total loss vehicles.

60.     Progressive knows that its insureds typically have no practical choice other than to accept the total loss payment offered by Progressive simply because the insured needs those monies to purchase a replacement vehicle.

61.     Further, an insured cannot wait on the appraisal process.  Progressive also has a regular practice of threatening to withdraw its offer to pay a total loss if the insured requests an appraisal.  An appraisal process, including selection of an umpire, may take forty-five (45) days or more.

62.     Progressive's threat to withdraw its offer, combined with delay and expense to the insured of an appraisal, as explained below, present bad faith obstacles to a fair appraisal. Progressive simply "stands pat" unless it is sued.

63.     Progressive knows that if it insists on "standing" on the WCTL Valuation, the great majority of insureds will simply capitulate and take the Progressive total loss payment.

64.     Progressive also had, and continues to have, a regular practice that it does not demand an appraisal unless and until an insured files a lawsuit.  Progressive does not include the appraisal provision in its policies for the appropriate purpose of a cheap and efficient resolution, on a timely basis, of disputed first-party total loss claims.  As stated, even where there is a clear and material dispute with an insured, Progressive does not demand an appraisal unless a lawsuit is filed.

65.     Prejudice to Plaintiff Mian and Other Insureds:  Progressive's scheme to not invoke the appraisal process unless and until there is litigation materially prejudices Progressive insureds, including Plaintiff and the Texas Class, in several material ways.

66.     First, Progressive typically sells the salvaged total loss vehicle to one of two companies, Copart or IAA.  These companies pay a salvage value to Progressive and then market salvaged parts from total loss vehicles.  The total loss vehicle is typically sold by Progressive and salvaged for spare parts in thirty (30) to forty-five (45) days after the total loss occurs.

67.     Progressive has actual knowledge that if an insured disputes Progressive's total loss payment but does not demand an appraisal, the total loss vehicle will be unavailable for inspection and appraisal after such salvage.  Thus, Progressive knows that if it does not request an appraisal for months or even years, and then does so only if and when litigation is filed against Progressive, the total loss vehicle will be unavailable for physical inspection and appraisal.  Consistent with Progressive's practice, Plaintiff's Vehicle was salvaged and is not available for an inspection.

68.     Progressive also knows that industry-recognized information regarding comparable used vehicles listed for sale at the time of a loss from sources such as AutoTrader and Cars.com is no longer current after about ninety (90) days.

69.     The only possible appraisal after the vehicle has been salvaged is what is known in the industry as a "desktop" appraisal, which is based upon the limited information available a year or two years after the total loss.

70.     The prejudice to insureds such as Plaintiff is clearly illustrated by the information regarding the "vehicle condition," which is listed in WCTL Reports.  See Exhibit B at 4. Consistent with its standard practice, the WCTL Reports list purported "component condition" for "interior" (including headliner, glass, dash/console, seats and carpet), "exterior" (including

13

body vinyl/convertible top, trim and paint), "mechanical" (including engine and transmission) and "tires."

71.     When the vehicle is unavailable at the time that Progressive demands an appraisal, it is impossible to fairly review the actual condition of each of the listed "component" conditions based upon an inspection.  Thus, Plaintiff has been deprived of the right to proper inspection-based appraisal as a result of Progressive's delay and the salvage of his vehicle.

72.     Cost as a Deterrent to an Appraisal:  In addition, the appraisal provision in the Policy requires that the insured pay for the cost of an appraiser and share the expense of a third-party umpire.  This provision is intended by Progressive to be and is, in fact, a significant and improper deterrent to insureds such as Plaintiff with regard to invoking the appraisal provision. This is because the cost to Plaintiff for an in-person inspection by an appraiser, plus the fees and expenses of a third-party umpire, may well exceed $1,000.

73.     For all these reasons, based upon its pre-existing scheme regarding untimely utilization of the appraisal provision and the clear prejudice to insureds such as Plaintiff, Progressive has waived and is estopped from invoking the appraisal provision in the Mian Policy.

## CLASS ALLEGATIONS

74.     Plaintiff brings this class action individually and on behalf of all others similarly situated, for all claims alleged herein, pursuant to TEX. R. CIV. PRO. 42.  All persons and entities that have made first-party claims since November 15, 2015 under an automobile insurance policy issued within the state of Texas by Progressive whose vehicles were declared a total loss by

Progressive and were valued using the WCTL total loss valuation system should be included within this Texas Class.

75.     Progressive, J.D. Power, Mitchell, all related entities, subsidiaries or affiliates of said Defendants, any entity in which said Defendants have a controlling interest, and any and all of said Defendants' employees, affiliates, legal representatives, heirs, successors, or assignees should be excluded from the Texas Class..

76.     Also, any person or entity that has previously commenced and resolved a lawsuit against said Defendants arising out of the subject matter of this lawsuit should be excluded from the Texas Class.

77.     Plaintiff also excludes from the Texas Class the Judge assigned to this case and any member of the Judge's immediate family.

78.     The Condition Adjustment Subclass: One subclass consists of Texas insureds whose total loss claims were reduced by negative or downward Condition Adjustments (the "Texas Condition Adjustment Subclass").

79.     The Base Value Subclass: A second subclass consists of all Texas insureds whose vehicles received WCTL Reports with Market Values which were less than Actual Cash Value as established by Guidebooks ("the Texas Market Value Subclass").

80.     Numerosity: The Texas Class is so numerous that joinder of all affected persons would be impracticable. Although the exact number of Texas Class members is unknown to Plaintiff, the Texas Class is estimated to comprise many thousands of people who have sustained total losses to their vehicles while insured by Progressive.

81.     <u>Commonality</u>: Numerous questions of law and fact are common to Plaintiff and the Texas Class and predominate over any individual questions. These legal and factual questions include, but are not limited to:

a)      Whether Progressive failed to properly investigate and determine that WCTL Valuations are statistically invalid;

b)      Whether Progressive had actual knowledge that WCTL Valuations are statistically invalid;

c)      Whether Texas law required Progressive to pay Actual Cash Value to its Texas insureds;

d)      Whether Progressive's Policy required it to pay Actual Cash Value to its Texas insureds.

e)      Whether Progressive breached its contracts of insurance with its Texas insureds by improperly underpaying total loss claims through the use of statistically invalid J.D. Power/Mitchell WCTL Valuations;

f)      Whether Progressive failed to pay Actual Cash Value to its Texas insureds;

g)      Whether WCTL Valuations properly calculate the Actual Cash Value of total loss vehicles at the time of the loss;

h)      Whether Progressive has intentionally and systemically underpaid total loss claims to Plaintiff and the Texas Class by using statistically invalid WCTL Valuations;

i)      Whether Plaintiff and the Texas Class have sustained damages;

j)      Whether Defendants have been unjustly enriched as a result of the scheme described herein; and,

k)      Whether Progressive, J.D. Power and Mitchell have conspired, as alleged herein.

82.     <u>Typicality</u>**:** Plaintiff's claims are typical of the claims of the Texas Class members, as Plaintiff and all members of the Texas Class have suffered damages as a result of Defendants' unlawful and deceptive scheme of settling total loss vehicle claims for substantially less than the actual replacement costs of such vehicles. Specifically, the total loss claims of the Texas Class members were adjusted by Progressive based upon WCTL Valuations. The same discovery and evidence that would be used to support Plaintiff's claims will be used to support the claims of the members of the Texas Class.

83.     <u>Adequacy of Representation</u>**:** Plaintiff will fully and adequately represent and protect the interests of the Texas Class members because they share common injuries as a result of Defendants' conduct that is applicable to all members of the Texas Class. Plaintiff has retained counsel with substantial experience in prosecuting consumer class actions. Plaintiff and counsel are committed to prosecuting this action vigorously on behalf of the Texas Class and have the financial resources to do so. Neither Plaintiff nor his counsel have any interests that are contrary to or in conflict with those of the Texas Class they seek to represent.

84.     <u>Predominance and Superiority</u>**:** This action is properly maintained as a class action because questions of law and fact common to Plaintiff's claims and the claims of the members of the Texas Class predominate over questions of law and fact affecting only individual members of the Texas Class, such that a class action is superior to other methods for the fair and

efficient adjudication of this controversy. The issues in relation to Plaintiff's claims are similar to the issues relating to the claims of the other members of the Texas Class, such that a class action provides a far more efficient method to resolve the claims rather than a myriad of separate lawsuits.  Indeed, for most Texas Class members, a class action is the only mechanism by which they could reasonably expect to vindicate their rights.  Certification of the Texas Class is also supported by the following considerations:

a)      The relatively small amount of damages that members of the Texas Class have suffered on an individual basis would not justify the prosecution of separate lawsuits;

b)      Counsel in this class action are not aware of any other earlier litigation against Defendants to which any other members of the Texas Class are a party and in which any question of law or fact controverted in the subject action has been or is to be adjudicated;

c)      By virtue of Defendants' efforts to conceal their scheme, many Texas Class members may not even be aware that they have a claim;

d)      The prosecution of separate actions by individual members of the Texas Class would create a risk of inconsistent and varying adjudications concerning the subject of this action;

e)      Class treatment of predominating common questions of law and fact is superior to multiple individual actions because it would conserve the resources of the courts and the litigants and would further the efficient adjudication of Texas Class member claims; and

f)      Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

## DAMAGES CALCULATIONS FOR THE TEXAS CLASS

85.      Calculation of damages for the Texas Class is readily manageable.  Progressive maintains specific information in its electronic database relating to first-party total loss claims identifying each claim in the amount of any negative or downward Condition Adjustment on each such claim.

86.      In addition, Progressive maintains aggregate data on the total amount of negative or downward Condition Adjustments in Texas (and other states) on an annual basis.

87.      Accordingly, when the Texas Class establishes that all the Progressive negative or downward Condition Adjustments are statistically invalid, then each member of the Texas Class will be entitled to a refund in the full amount of any such Condition Adjustment. As stated, that amount can be readily determined on an individual basis for each Progressive first-party insured as well as on an aggregate basis.

88.      All the damages claimed in this action on a class-wide basis are readily and easily ascertainable from the Progressive electronic database relating to its Texas total loss claims.

89.      Defendants have acted, or refused to act, in a manner that applies generally to the Texas Class, such that final injunctive relief is appropriate as to the Texas Class as a whole.

## Count I – Breach of Contract Against Progressive

90.      Plaintiff incorporates by reference the allegations in Paragraphs 1 through 89 as though fully set forth herein.

91.      The Progressive Policy issued to Plaintiff constitutes a valid and binding contract.

92.     Progressive has breached its Policy with Plaintiff in multiple ways, resulting in the material underpayment of Plaintiff's total loss claims, which include, but are not limited to: (a) failure to properly investigate and confirm the statistical validity of the WCTL Methodology; (b) improper delegation of its obligation to value total loss vehicles, including Plaintiff's Vehicle, to J.D. Power and Mitchell; and (c) wrongful failure to properly adjust and pay the amounts due and owed to Plaintiff for his total loss vehicle sufficient for Plaintiff to obtain a comparable replacement vehicle.

93.     Specifically, Progressive has failed to pay the Actual Cash Value as required by its Policy to Plaintiff and to Texas Class members.

94.     Progressive's breach proximately caused Plaintiff's actual damages and the actual damages of the Texas Class. Thus, Progressive is liable for compensatory, consequential and incidental damages flowing from its breach of the Policy, as well as attorneys' fees and interest.

95.     This claim applies to all Texas Class members.

## Count II - Bad Faith
### (Against Defendant Progressive)

96.     Plaintiff incorporates by reference the allegations in Paragraphs 1 through 89 as though fully set forth herein.

97.     The Progressive Policies obligated Progressive to properly and reasonably investigate the fair value of the total losses sustained by each such policyholder, including Plaintiff, and then pay that amount in a timely manner. The Progressive Policies also obligated Progressive to act in good faith and to deal fairly with Plaintiff in handling and adjusting his total loss claim.

98.     Instead of properly investigating and paying Plaintiff's total loss claim, Progressive contracted with J.D. Power and Mitchell and utilized the WCTL Valuations for the wrongful and bad faith purpose of intentionally and improperly reducing total loss payments to Plaintiff and the Texas Class, in an improper attempt to save money at the expense of Progressive insureds, including Plaintiff and the Texas Class.

99.     Progressive has actual knowledge that the WCTL Valuation Methodology is statistically invalid.

100.    Progressive's conduct in "low balling" Plaintiff's claim, intentionally undervaluing Plaintiff's claim, and withholding the full value of that claim, is unreasonable and unjustifiable under the circumstances, and constitutes bad faith under Texas law.

101.    Progressive has acted in bad faith in adjusting Plaintiff's claim and the total loss claims of Texas Class members in a systemic and uniform manner by making statistically invalid downward Condition Adjustments based upon WCTL Valuations.

102.    Plaintiff has suffered damages as a direct and proximate result of such unreasonable, bad faith conduct on the part of Progressive and is, therefore, entitled to recover compensatory and punitive damages, as well as any other such damages, costs or attorneys' fees Plaintiff may be entitled under Texas law.

103.    This claim applies to all Texas Class members.

### Count III - Tortious Interference with Performance of a Contract
**(Against Defendants J.D. Power and Mitchell)**

104.    Plaintiff incorporates by reference the allegations in Paragraphs 1 through 89 as though fully set forth herein.

105.    The Progressive Policies obligated Progressive to properly investigate the value of Plaintiff's total loss claim using a fair and statistically valid valuation system or methodology, and then to properly pay Plaintiff the appropriate value of his total loss.

106.    At all times relevant hereto, and based on Mitchell's contract with Progressive to provide WCTL Reports, J.D. Power and Mitchell knew that Progressive entered into such Policies with its insureds and that the Progressive Policies obligated Progressive to promptly and properly pay total loss claims.

107.    J.D. Power and Mitchell had actual knowledge of the identity of Plaintiff and each Texas Class member as Progressive insureds.  This knowledge is demonstrated by the fact that J.D. Power and Mitchell prepared the Plaintiff's WCTL Report, which specifically identified Plaintiff and valued Plaintiff's Vehicle.  The same is true for the WCTL Reports of the other Texas Class Members.

108.    J.D. Power and Mitchell had actual knowledge that Progressive used the WCTL Valuations to adjust the total loss claims of Plaintiff and the Texas Class members.

109.    J.D. Power and Mitchell also had actual knowledge that Progressive typically would refuse to increase total loss valuations beyond the WCTL Valuations and that Progressive settled the substantial majority of its total loss claims based upon WCTL Valuations provided by J.D. Power and Mitchell.

110.    J.D. Power and Mitchell wrongfully interfered with Progressive's contractual obligations to Plaintiff by knowingly and intentionally selling to Progressive a statistically invalid and wholly arbitrary total loss valuation product for the specific purpose of enabling Progressive to underpay the claims of total loss insureds, including Plaintiff.

111.    Progressive's breaches that were caused by J.D. Power and Mitchell's unjustified, intentional and malicious interference with Plaintiff's contractual rights under the Mian Policy include:

      (a)   failing to properly value Plaintiff's total loss;

      (b)   using arbitrary and statistically invalid methodology to value Plaintiff's total loss claim; and

      (c)   causing Progressive to fail to pay the proper amount due and owed to Plaintiff.

112.    Plaintiff suffered damages as a proximate result of J.D. Power and Mitchell's improper WCTL Valuations and resulting tortious interference with the contractual relationship between Progressive and Plaintiff and the Texas Class. Therefore, Plaintiff is entitled to recover compensatory and punitive damages, as well as any other such damages, costs or attorneys' fees to which he may be entitled under Texas law.

113.    This claim applies to all Texas Class Members.

### Count IV - Breach of Contract Arising from Plaintiff's Status as Third-Party Beneficiary of the Agreement between J.D. Power/Mitchell and Progressive (Against Defendants J.D. Power and Mitchell)

114.    Plaintiff incorporates by reference the allegations in Paragraphs 1 through 89 as though fully set forth herein.

115.    At all times relevant hereto, Mitchell, through its joint venture with J.D. Power, contracted to provide Progressive with total loss valuations (the "Agreement"). The intended purpose of this Agreement was to outsource Progressive's valuation of total loss

claims for the purpose of satisfying the obligations of Progressive to value and pay total loss claims.

116.   As insureds for whom valuations were prepared under this Agreement, Plaintiff and the Texas Class are intended beneficiaries of the Agreement between Progressive and Mitchell, and are entitled to sue for breach of that Agreement.

117.   Plaintiff alleges that J.D. Power and Mitchell breached this Agreement by providing Progressive with total loss valuations that were not statistically valid and were wholly arbitrary in the manner in which Progressive valued total losses, including Plaintiff's total loss. The improper WCTL Valuations were supplied to Progressive by Mitchell in the course of business for the purported direct benefit of Plaintiff and the Texas Class.

118.   Mitchell's breach of its Agreement to provide valid total loss valuations to Progressive proximately caused damage to Plaintiff. Mitchell is, therefore, liable to Plaintiff and the Texas Class as intended third-party beneficiaries for compensatory and consequential damages flowing from said breaches.

119.   J.D. Power is likewise liable for Mitchell's breach of its Agreement with Progressive based upon its actual involvement with the WCTL Methodology and its partnership with Mitchell.

120.   This claim applies to all Texas Class members.

### Count V - Civil Conspiracy
### (Against Defendants Progressive, J.D. Power and Mitchell)

121.   Plaintiff incorporates by reference the allegations in Paragraphs 1 through 89 as though fully set forth herein.

122. J.D. Power, Mitchell and Progressive entered into an illicit agreement and conspiracy to utilize WCTL Valuations to provide improper total loss valuations. Specifically, Progressive and Mitchell conspired to underpay Plaintiff and the Texas Class by using WCTL Valuations, which included the aforementioned statistically invalid Five Steps (and sub-steps), which were not intended to calculate the fair value of total loss vehicles, but rather to improperly undervalue total loss claims of Progressive insureds.

123. J.D. Power is a part of the conspiracy by reason of its partnership with Mitchell and its participation with Mitchell in building the WCTL Valuations for use by Progressive and other insurers. Mitchell's role in the conspiracy is evidenced by its Agreement with Progressive and its partnership with J.D. Power.

124. Progressive is a part of the conspiracy by reason of having actual knowledge that the WCTL Valuations provided through its partnership with J.D. Power and Mitchell were statically invalid and continuing to utilize the WCTL Valuations when determining the payment of Plaintiff and Texas Class members' total loss claims.

125. Progressive's conspiracy with J.D. Power and Mitchell to use the invalid WCTL Valuation Methodology deprived Plaintiff and the Texas Class of the proper value of their total losses. The overt acts emanating from Defendants' illicit agreement to so deprive Plaintiff and the Texas Class include, but are not limited to, J.D. Power's and Mitchell's undervaluation of Plaintiff's claim using WCTL Valuations, and Progressive's failure to properly investigate, adjust and pay such claim directly resulting from the WCTL Valuations.

126.     Plaintiff and the Texas Class members have been damaged as a proximate result of Defendants' illicit agreement and conspiracy.  Therefore, J.D. Power, Mitchell and Progressive are each liable for the torts of one another arising out of their conspiracy as defined herein, and Plaintiff and the Texas Class members are entitled to recover compensatory and punitive damages against Progressive, J.D. Power and Mitchell.

127.     This claim applies to all Texas Class members.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, Basit Mian, respectfully requests that this Honorable Court, for himself and all Texas Class members:

A.     Certify the Texas Class alleged herein;

B.     Appoint Plaintiff as the Texas Class Representative;

C.     Appoint the undersigned as Texas Class Counsel;

D.     Award Plaintiff and the Texas Class members actual damages in such amount as the Court or jury may determine;

E.     Award declaratory and injunctive relief as permitted by law;

F.     Award punitive damages as permitted by law;

G.     Award reasonable attorneys' fees, expert fees, litigation expenses, and court costs to counsel based upon the benefit received by Plaintiff and the Texas Class; and

H.     Award Plaintiff and the Texas Class members any additional relief as this Court deems just and proper, including injunctive relief to prohibit Progressive from continuing to utilize WCTL Valuations in Texas.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all counts for which a trial by jury is permitted by law.

Respectfully submitted,

*Barbara J. Gardner*

Barbara J. Gardner
Texas Bar No. 07651300
**GARDNER EMPLOYMENT LAW**
2100 West Loop South #1125
Houston, TX 77027
Telephone:     (832) 834-3410
Facsimile:      (832) 998-8118
Barbara@GardnerEmploymentLaw.com

**WALLER LAW OFFICE, PC** (Pending
Application to appear *pro hac vice*)
Jonathan H. Waller
2001 Park Place, Suite 900
Birmingham, AL 35203
Telephone: (205) 313-7330
jwaller@waller-law.com

Jonathan B. Cohen (Pending Application to appear
*pro hac vice*)
John A. Yanchunis (Pending Application to appear
*pro hac vice*)
**MORGAN & MORGAN**
201 N. Franklin St., 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-2434
jcohen@forthepeople.com
jyanchunis@forthepeople.com

***Attorneys for Plaintiff and the proposed Texas Class***

PROGRESSIVE
P.O. BOX 31260
TAMPA, FL 33631


DIRECT Auto

**Policy Number: 62455056**
Underwritten by:
Progressive County Mutual Ins Co
October 22, 2018
Policy Period: Nov 24, 2018 - May 24, 2019
Page 1 of 2

**progressive.com**
**Online Service**
Make payments, check billing activity, update
policy information or check status of a claim.

**1-800-776-4737**
For customer service and claims service,
24 hours a day, 7 days a week.

BASIT M MIAN
5740 GULFTON ST #1300
HOUSTON, TX 77081

# Auto Insurance
# Coverage Summary
## This is your Renewal
## Declarations Page

The coverages, limits and policy period shown apply only if you pay for this policy to renew.

Your coverage begins on November 24, 2018 at 12:01 a.m.  This policy expires on May 24, 2019 at 12:01 a.m.

Your insurance policy and any policy endorsements contain a full explanation of your coverage.  The policy contract is form 9611D TX
(08/15).  The contract is modified by forms Z357 (06/06) and 4884 (10/08).

## Automobile Burglary and Theft Prevention Authority Fee

Notice:  A fee of $1.00 is payable in addition to the premium due under this policy.  This fee reimburses partially or
completely the insurer, as permitted by 28 TAC §5.205, for the $2.00 fee per motor vehicle per year required to be paid to
the Automobile Burglary and Theft Prevention Authority under *Vernon's Annotated Revised Civil Statutes of the
State of Texas*, Article 4413(37), §10, which was effective on June 6, 1991, and revised effective September 1, 2011.

## Drivers and resident relatives

| | Additional information |
|---|---|
| Basit M Mian | Named insured |
| Shaguftha Mian | |




Continued

Form 6489 TX (05/16)

Policy Number: 62455056

Basit M Mian
Page 2  of 2

## Outline of coverage

**2012 MAZDA CX-9 4 DOOR WAGON**
VIN: **JM3TB2DA7C0336505**
Garaging ZIP Code: 77081
Primary use of the vehicle: Pleasure

| | Limits | Deductible | Premium |
|---|---|---|---|
| | | | $320 |
| Liability to Others | | | |
| Bodily Injury Liability | $50,007 each person/$100,007 each accident | | |
| Property Damage Liability | $50,007 each accident | | ... |
| Personal Injury Protection | Rejected | | -- |
| Uninsured/Underinsured Motorist Bodily Injury | $30,007 each person/$60,007 each accident | | 29 |
| Uninsured/Underinsured Property Damage | $25,007 each accident | $250 | 19 |
| Comprehensive | Actual Cash Value | $249 | 178 |
| Collision | Actual Cash Value | $499 | 125 |
| **Subtotal policy premium** | | | **$671.00** |
| Automobile Burglary/Theft Prevention Authority Fee | | | 1.00 |
| **Total 6 month policy premium and fees** | | | **$672.00** |
| Discount if paid in full | | | -97.00 |
| **Total 6 month policy premium if paid in full and fees** | | | **$575.00** |

## Premium discounts

| Policy | | |
|---|---|---|
| 62455056 | | Five-Year Accident Free, Five-Year Claim Free, Online Quote, Continuous Insurance: Diamond, Paperless and Three-Year Safe Driving |

Form 6489 TX (05/16)

# Vehicle Valuation Report

Prepared For  Progressive Group of Insurance Companies   (800) 321-9843


mitchell

## Claim Information

| | | | |
|---|---|---|---|
| Claim Number | Policy Number | Loss Type | Insured |
| ████-01 | | COLLISION | BASIT MIAN 5740 GULFTON ST #1300 HOUSTON, TX 77081 +1-917-7033684 |

| | | | | |
|---|---|---|---|---|
| Loss Date | Reported Date | Valuation Report Date | Valuation Report ID | Version Number |
| 04/25/2019 | 04/25/2019 | 05/14/2019 | 1008931890 | 1 |

## Vehicle Information

| | | | | |
|---|---|---|---|---|
| Year | Make | Model | Location | Mileage |
| 2012 | Mazda | CX-9 Grand Touring 4 Door Utility 113" WB 3.7L 6 Cyl Gas A FWD | TX 77081 | 126,159 miles |

| | | | |
|---|---|---|---|
| Ext Color | License | VIN | Title History |
| Dolphin Gray Mica | FJX2365, Texas, Exp. 02/2020 | JM3TB2DA7C0336505 | No |

## Valuation Summary

### Loss Vehicle Adjustments
Adjustments specific to your vehicle

| | |
|---|---|
| Base Value = | $10,437.84 |
| Condition - | $2,073.24 |
| Prior Damage | $0.00 |
| Aftermarket Parts | $0.00 |
| Refurbishment | $0.00 |
| Market Value = | $8,364.60 |

### Settlement Adjustments
Adjustments specific to your policy

| | |
|---|---|
| Deductible - | $499.00 |
| Settlement Value = | $7,865.60 |

# Settlement Value:
# $7,865.60

PLAINTIFF'S EXHIBIT
B

Mitchell WorkCenter™
Total Loss
© 2013 Mitchell International, Inc. All Rights Reserved.

# Loss Vehicle Detail

Loss vehicle: 2012 Mazda CX-9 | Grand Touring 4 Door Utility 113" WB | 3.7L 6 Cyl Gas A FWD

## Standard Equipment

### Exterior

| | |
|---|---|
| 20" x 7.5" aluminum wheels | Body-color front/rear bumper |
| Body-color pwr heated mirrors w/side markers | Body-color roof spoiler |
| Bright door handles | Fog lamps |
| P245/50R20 all-season tires | Rear privacy glass |
| T155/90R18 temporary spare | Variable intermittent rain-sensing windshield wipers |
| Variable intermittent rear wiper w/washer | Xenon (HID) headlights w/auto on/off & manual leveling |

### Interior

| | |
|---|---|
| (2) rear coat hooks | (3) auxiliary 12-volt pwr outlets |
| (3) passenger assist grips | (4) 3rd row cup holders |
| 1st/2nd/3rd row carpeted floor mats | 2nd row center armrest w/storage, (2) cup holders |
| 3-zone automatic climate control | 3rd row seating |
| 60/40 split fold-flat 2nd row reclining seats w/tilt & slide rear-access mechanism | All position adjustable headrests |
| AM/FM audio system w/CD/MP3 player, (6) speakers, aux input jack | Anti-theft perimeter alarm |
| Auto dimming rearview mirror w/rain sensor cover | Blind spot warning system |
| Bluetooth hands-free operation | Chrome/wood patterned trim accents |
| Cruise control | Driver side footrest |
| Dual sun visors w/illuminated vanity mirrors, extenders, cloth covers | Electroluminescent gauges |
| Element type rear window antenna | Front center console w/(2) cup holders |
| Front driver-side seatback map pocket | Front leather-wrapped center console armrest w/storage |
| Front/rear door storage pockets w/bottle holders | Full floor carpeting |
| Garage door opener | Glove box w/lock |
| Heated front reclining bucket seats w/8-way pwr adjustable driver seat, 4-way pwr adjustable passenger seat, pwr driver lumbar support, driver 3-position memory, high/low adjustable heating | Illuminated entry |
| Instrumentation-inc: tachometer, (2) trip odometers, trip computer, coolant temp/fuel gauges, outside temp display, digital clock | Keyless entry system w/Mazda advanced keyless entry system & start system |
| Leather trimmed front/2nd row seats | Leather-wrapped shift knob |
| Leather-wrapped tilt/telescopic steering wheel w/mounted audio controls | Lighting-inc: front door/cargo courtesy lamps, ignition, map lamps, glove box |
| Overhead console w/sunglass storage | Pwr door locks w/speed-sensitive auto locking |
| Pwr windows w/driver & passenger one-touch up/down & anti-pinch | Rear heater ducts |
| Rear under floor storage | Rear window defogger w/timer |
| Remote fuel door | Tire pressure monitoring system |

### Mechanical



| | |
|---|---|
| Dual bright finish exhaust tips | Front wheel drive |
| Front/rear stabilizer bars | Independent front MacPherson strut suspension |
| Independent rear multi-link suspension | Pwr ventilated front/rear disc brakes w/twin piston front calipers |

### Safety

| | |
|---|---|
| 2nd row child seat lower anchors & tethers (LATCH system) | 3-point seat belts for all seating positions |
| 4-wheel anti-lock brakes | Child safety rear door locks |
| Crushable brake pedal assembly | Driver & front passenger airbags -inc: passenger weight sensor |
| Dynamic stability control | Electronic brakeforce distribution |
| Front belts w/pretensioners & force limiters | Front seat active headrests |
| Front side airbags | Front/2nd row/3rd row side impact air curtains w/rollover protection |
| Front/rear crumple zones | Roll stability control |
| Side-impact door beams | Traction control |

## Packages

**GRAND TOURING PWR LIFTGATE PKG**
-inc: pwr open/close rear hatch

**MOONROOF & BOSE AUDIO PKG**
-inc: pwr glass sliding moonroof w/interior sunshade, Bose Centerpoint 5.1 surround sound system w/(10) speakers, SIRIUS satellite radio w/(4) month subscription

## Optional Equipment

| | |
|---|---|
| SIRIUS SATELLITE RADIO | WHEEL LOCKS |

*DIO/PIO = Dealer/Port Installed Options

# Loss Vehicle Base Value

Loss vehicle: 2012 Mazda CX-9 | Grand Touring 4 Door Utility 113" WB | 3.7L 6 Cyl Gas A FWD

## Comparable Vehicle Information

Search Radius used for this valuation: 75 miles from loss vehicle zip/postal code.

Typical Mileage for this vehicle: 89,000 miles

| # | Vehicle Description | Mileage | Location | Distance From Loss Vehicle | Price | Adjusted Value |
|---|---|---|---|---|---|---|
| 1 | 2012 MAZDA CX-9 GRAND TOURING 4D SUV 6 3.7L NORMAL GAS A 2WD | 112,244 | 77598 | 23 miles | $11,493.00 Sold Price | $11,853.17 |
| 2 | 2012 MAZDA CX-9 GRAND TOURING 4D SUV 6 3.7L NORMAL GAS A 2WD | 127,420 | 77598 | 23 miles | $10,262.00 Sold Price | $9,535.25 |
| 3 | 2012 MAZDA CX-9 GRAND TOURING 4D SUV 6 3.7L NORMAL GAS A 2WD | 76,100 | 77304 | 43 miles | $13,586.00 Sold Price | $10,238.65 |
| 4 | 2012 MAZDA CX-9 GRAND TOURING 4D SUV 6 3.7L NORMAL GAS A 2WD | 107,457 | 77075 | 14 miles | $10,500.00 List Price | $8,640.59 |
| 5 | 2012 MAZDA CX-9 GRAND TOURING 4D SUV 6 3.7L NORMAL GAS A 2WD | 118,409 | 77085 | 17 miles | $12,998.00 List Price | $11,922.12 |

**Base Value:** **$10,437.84**

# Loss Vehicle Adjustments

Loss vehicle: 2012 Mazda CX-9 | Grand Touring 4 Door Utility 113" WB | 3.7L 6 Cyl Gas A FWD

## Condition Adjustments

Condition Adjustment: -$2,073.24          Overall Condition: 2.15-Fair          Typical Vehicle Condition: 3.00

| Category | Condition | Comments |
|---|---|---|
| **Interior** | | |
| HEADLINER | 2 Fair | dmg does not req rpl |
| GLASS | 2 Fair | dmg does not req rpl |
| DASH/CONSOLE | 3 Good | some perm marks |
| SEATS | 2 Fair | sig wear, extensive creasing, seat cracking |
| CARPET | 2 Fair | 2 small holes |
| DOORS/INTERIOR PANELS | 2 Fair | rr trim pnl dmgd |
| **Exterior** | | |
| BODY | 1 Poor | majority exterior dings |
| VINYL/CONVERTIBLE TOP | Typical | |
| TRIM | 2 Fair | large impact front bumper |
| PAINT | 2 Fair | numerous small scratches |
| **Mechanical** | | |
| ENGINE | 3 Good | no missing or dmgd components |
| TRANSMISSION | 3 Good | no missing or dmgd components |
| Tire | 3 Good | rf8,lf8,rr9,lr9 |

Typical Vehicle Condition reflects a condition similar to the same year, make and model. Amount of wear and tear/ damage consistent with its age.

Comments:

## After Market Parts and OEM Equipment Adjustments

| Category | Description | Adjustment Type | Purchase Date | Amount Paid | Adjustment Amount |
|---|---|---|---|---|---|
| EXTERIOR | WIND DEFLECTOR (WINDOWS/SUNROOF) | INSTANT QUOTE | | | $0.00 |

# Comparable Vehicles

Loss vehicle: 2012 Mazda CX-9 | Grand Touring 4 Door Utility 113" WB | 3.7L 6 Cyl Gas A FWD

### 2012 MAZDA CX-9 GRAND TOURING 4D SUV 6 3.7 NORMAL GAS A2WD — Sold Price: $11,493.00

| VIN | Stock No | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle |
|---|---|---|---|---|
| JM3TB2DA8C0XXXXXX | | 04/10/2019 | 77598 | 23 miles |

**Source**
DEALER SALE - BUILDSHEET - J.D. POWER

| Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|
| Mileage | 126,159 | 112,244 | -$563.08 |
| Equipment | | | |
| GRAND TOURING PWR LIFTGATE PKG | Yes | No | $136.27 |
| MOONROOF & BOSE AUDIO PKG | Yes | No | $768.25 |
| WHEEL LOCKS | Yes | No | $18.73 |
| | | Total Adjustments: | $360.17 |
| | | **Adjusted Price:** | **$11,853.17** |

### 2012 MAZDA CX-9 GRAND TOURING 4D SUV 6 3.7 NORMAL GAS A2WD — Sold Price: $10,262.00

| VIN | Stock No | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle |
|---|---|---|---|---|
| JM3TB2DA1C0XXXXXX | | 03/01/2019 | 77598 | 23 miles |

**Source**
DEALER SALE - BUILDSHEET - J.D. POWER

| Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|
| Mileage | 126,159 | 127,420 | $36.76 |
| Equipment | | | |
| MOONROOF & BOSE AUDIO PKG | Yes | No | $685.96 |
| REAR ENTERTAINMENT SYSTEM W/BOSE AUDIO PKG | No | Yes | -$929.32 |
| TOWING PREP PKG | No | Yes | -$30.42 |
| NAVIGATION PKG | No | Yes | -$506.48 |
| WHEEL LOCKS | Yes | No | $16.73 |
| | | Total Adjustments: | -$726.75 |
| | | **Adjusted Price:** | **$9,535.25** |

**Comparable Vehicle Package Details**

GRAND TOURING PWR LIFTGATE PKG

REAR ENTERTAINMENT SYSTEM W/BOSE AUDIO PKG  (SIRIUS SATELLITE RADIO)

TOWING PREP PKG

NAVIGATION PKG

## 2012 MAZDA CX-9 GRAND TOURING 4D SUV 6 3.7 NORMAL GAS A2WD

Sold Price: $13,586.00

| VIN | Stock No. | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle |
|---|---|---|---|---|
| JM3TB2DA8C0XXXXXX | | 04/19/2019 | 77304 | 43 miles |

Source

DEALER SALE - BUILDSHEET - J.D. POWER

| Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|
| Mileage | 126,159 | 76,100 | -$2,659.29 |
| Equipment | | | |
| TOWING PREP PKG | No | Yes | -$40.27 |
| NAVIGATION PKG | No | Yes | -$670.54 |
| WHEEL LOCKS | Yes | No | $22.15 |
| | | Total Adjustments: | -$3,347.95 |
| | | **Adjusted Price:** | **$10,238.05** |

Comparable Vehicle Package Details

GRAND TOURING PWR LIFTGATE PKG

MOONROOF & BOSE AUDIO PKG  (SIRIUS SATELLITE RADIO)

TOWING PREP PKG

NAVIGATION PKG

**2012 MAZDA CX-9 GRAND TOURING 4D SUV 6 3.7 NORMAL GAS A2WD**                    List Price:  $10,500.00

| VIN | Stock No | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle |
|---|---|---|---|---|
| JM3TB2DA3C0348375 | 11069 | 05/13/2019 | 77075 | 14 miles |

Source

DEALER WEB LISTING -
BUILDSHEET - VAST.COM

TEXAS STAR MOTORS

9006 ALMEDA GENOA ROAD

HOUSTON TX 77075

713-301-8121

| Adjustments | Loss Vehicle | This Vehicle | Amount |
|---|---|---|---|
| Projected Sold Adjustment | | | -$691.00 |
| Mileage | 126,159 | 107,467 | -$671.21 |
| Equipment | | | |
| TOWING PREP PKG | No | Yes | -$29.07 |
| NAVIGATION PKG | No | Yes | -$484.12 |
| WHEEL LOCKS | Yes | No | $15.99 |

Total Adjustments:   -$1,859.41
**Adjusted Price:    $8,640.59**

Comparable Vehicle Package Details:

GRAND TOURING PWR LIFTGATE PKG

MOONROOF & BOSE AUDIO PKG  (SIRIUS SATELLITE RADIO)

TOWING PREP PKG

NAVIGATION PKG

Claim #████████-01 | © 2018 Mitchell International, Inc. All Rights Reserved. | Page 7

**2012 MAZDA CX-9 GRAND TOURING 4D SUV 6 3.7 NORMAL GAS A2WD**      List Price: $12,998.00

| VIN | Stock No | Listing Date | ZIP/Postal Code | Distance from Loss Vehicle |
|-----|----------|--------------|-----------------|----------------------------|
| JM3TB2DA2C0333253 | 17088168 | 05/06/2019 | 77065 | 17 miles |

Source

DEALER WEB LISTING -
BUILDSHEET - VAST.COM

CARMAX DEALERSHIP

19500 N.W. FREEWAY (U.S. 290)

HOUSTON TX 77065

281-970-6690

| Adjustments | Loss Vehicle | This Vehicle | Amount |
|-------------|--------------|--------------|--------|
| Projected Sold Adjustment | | | $0.00 |
| Mileage | 126,159 | 116,409 | -$417.02 |
| Equipment | | | |
| TOWING PREP PKG | No | Yes | -$38.53 |
| NAVIGATION PKG | No | Yes | -$641.52 |
| WHEEL LOCKS | Yes | No | $21.19 |

|  |  |
|--|--|
| Total Adjustments: | -$1,075.88 |
| **Adjusted Price:** | **$11,922.12** |

Comparable Vehicle Package Details

GRAND TOURING PWR LIFTGATE PKG

MOONROOF & BOSE AUDIO PKG  (SIRIUS SATELLITE RADIO)

TOWING PREP PKG

NAVIGATION PKG

## Sub-Model Comparison

| Sub-Model Description | Configuration | Original MSRP |
|----------------------|---------------|---------------|
| 2012 Mazda CX-9 Grand Touring | 4 Door Utility 113" WB 3.7L 6 Cyl Gas  FWD | $33,735.00 |

# Vehicle Valuation Methodology Explanation

WorkCenter Total Loss was designed and built in conjunction with J.D. Powers, experts in data analysis and vehicle pricing and a highly trusted name among consumers. With years of experience in vehicle pricing, J.D Power is a credible, third-party expert whose name provides consumer recognition and confidence. WCTL provides a consistent methodology across all vehicles and it includes valid comparable vehicles that most closely resemble the totaled vehicle and are similar to the vehicles a consumer would find in their own research.

WorkCenter Total Loss produces accurate and easy-to-understand vehicle valuations via this five step process:

### Step 1 - Locate Comparable Vehicles

Locate vehicles that are the closest match to the loss vehicle in the same market area. WorkCenter Total Loss utilizes consumer-based vehicle sources along with inventory directly from Dealerships. When available WCTL also provides sold vehicle records from sources such as J.D. Powers.

### Step 2 - Adjust Comparable Vehicles

Make adjustments to the prices of the comparable vehicles. The comparable vehicles are identical to the loss vehicle except where adjustments are itemized. There are several types of comparable vehicle adjustments

- Projected Sold Adjustment – an adjustment to reflect consumer purchasing behavior (negotiating a different price than the listed price).

- Mileage Adjustment - an adjustment for differences in mileage between the comparable vehicle and the loss vehicle.

- Equipment- adjustments for differences in equipment between the comparable vehicle (e.g. equipment packages and options) and the loss vehicle.

### Step 3 - Calculate Base Vehicle Value

The base vehicle value is calculated by averaging the adjusted prices of the comparable vehicles.

### Step 4 - Calculate Loss Vehicle Adjustments

There are four types of loss vehicle adjustments:

- Condition Adjustment:

  Adjustments to account for the condition of the loss vehicle prior to the loss.

- Prior Damage Adjustment:

  Adjustments to account for any prior damage present on the loss vehicle prior to the loss.

- After Market Part Adjustment:

  Adjustments to account for any after market parts present on the loss vehicle prior to the loss.

- Refurbishment Adjustment

  Adjustments to account for any refurbishment performed on the loss vehicle prior to the loss.

### Step 5 - Calculate the Market Value

The Market Value is calculated by applying the loss vehicle adjustments to the base value.