United States District Court
Southern District of Texas

**ENTERED**

June 11, 2020

David J. Bradley, Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| BASIT MIAN, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:20-00536 |
| | § | |
| PROGRESSIVE COUNTY MUTUAL | § | |
| INSURANCE COMPANY, J.D. | § | |
| POWER, and MITCHELL | § | |
| INTERNATIONAL, INC., | § | |
| Defendants. | § | |

## <u>MEMORANDUM AND ORDER</u>

Before the Court in this breach of contract and bad faith action are Progressive County Mutual Insurance Company's ("Progressive's") Motion to Dismiss or, Alternatively, to Stay [Doc. # 19] ("Progressive's Motion") and J.D. Power's and Mitchell International, Inc.'s (collectively, the "Valuation Defendants") Motion to Dismiss Pursuant to Rule 12(b)(6) [Doc. # 21] ("Valuation Defendants' Motion"). Plaintiff Basit Mian ("Plaintiff") has responded,[1] and Progressive and the Valuation Defendants have replied.[2] The Motions are ripe for decision. Base on the parties briefing, pertinent matters of record, and relevant legal authority, the Court **grants**

---

[1] Plaintiff's Response in Opposition to Defendant Progressive's Motion to Dismiss [Doc. # 33]; Plaintiff's Response in Opposition to Defendants Mitchell International, Inc., and J.D. Power & Associates' Motion to Dismiss [Doc. # 34].

[2] Defendants J.D. Power and Mitchell International, Inc.'s Reply in Support of Their Motion to Dismiss Pursuant to Rule 12(B)(6) [Doc. # 37]; Defendant Progressive County Mutual Insurance Company's Reply in Support of Its Motion to Dismiss or, alternatively, to Stay [Doc. # 38].

**in part and denies in part** Progressive's Motion and **grants in part and denies in part** the Valuation Defendants' Motion.

## I.   BACKGROUND

Plaintiff alleges in his Complaint the following facts, which the Court takes as true for the purposes of the pending motions.[3]  Plaintiff is the former owner of a 2012 Mazda CX-9 (the "Vehicle") that was damaged in a car accident on April 25, 2019.[4]  Progressive issued an insurance policy to Plaintiff, which covered the Vehicle and was in effect on April 25, 2019.[5]  Following the accident, Progressive determined that the Vehicle was a "total loss."[6]

Plaintiff's insurance policy with Progressive provided for the adjustment and settlement of total loss claims on the basis of the "actual cash value" of his Vehicle.[7]  To determine the value of Plaintiff's Vehicle, Progressive obtained a Work Center Total Loss ("WCTL") report for the Vehicle.[8]

WCTL reports were developed through a joint partnership between J.D. Power and Mitchell International ("Mitchell").[9]  WCTL reports are prepared for individual cars at the request of insurers, like Progressive.  Each WCTL report uses

---

[3]     Plaintiff's Original Petition [Doc. # 1-3] ("Complaint").

[4]     *Id.* ¶¶ 17, 19.

[5]     *Id.* ¶ 18.

[6]     *Id.* ¶ 19.  Vehicles are typically determined to be "total losses" when the estimated repair costs exceed either the value of the vehicle or 80% of the pre-crash value of the vehicle. Id. ¶ 54.

[7]     *Id.* ¶¶ 10, 21.

[8]     *Id.* ¶ 22.

[9]     *Id.* ¶ 28.

the same five-step methodology: "Step 1 - Locate Comparable Vehicles, Step 2 - Adjust Comparable Vehicles, Step 3 - Calculate Base Vehicle Value, Step 4 - Calculate Loss Vehicle Adjustments, Step 5 - Calculate the Base Value."[10] Plaintiff alleges that each of these steps is "statistically invalid and does not result in a proper valuation for total loss vehicles in Texas."[11] Plaintiff alleges that the condition adjustments in WCTL reports are "wholly arbitrary and are not based on any statistical, objective, valid, or verifiable data."[12] Progressive typically refuses to negotiate the value of total loss vehicles, and insureds have no practical choice other than to accept the total loss payment based on the WCTL report.[13]

The WCTL methodology produces values for total loss vehicles that are significantly lower than those assigned by other valuation models, including NADA, Black Book, Red Book, and Kelly Blue Book.[14] Plaintiff alleges that this fact is known to Progressive, and is in fact why Progressive chooses to use WCTL reports for the majority of its total loss claims in Texas.[15] By undervaluing its insureds' cars, Progressive is able to pay less for its insureds' total loss claims and save millions of dollars.[16]

---

[10]     *Id.* ¶ 34; Exhibit B, WCTL report for Plaintiff's Vehicle.

[11]     Complaint ¶ 35.

[12]     *Id.* ¶ 39.

[13]     *Id.* ¶¶ 59-60.

[14]     *Id.* ¶ 32.

[15]     *Id.* ¶¶ 37, 42.

[16]     *Id.* ¶ 40.

Other entities in the automobile industry, including car dealers, banks, and other lenders, do not use WCTL reports to determine the value of used vehicles.[17] Instead, these entities use industry-recognized guidebooks including NADA, Black Book, Red Book, and Kelly Blue Book.[18]  Insurance companies have historically used these guidebooks to determine the value of total loss vehicles.[19]  Many insurers continue to use these guidebooks to determine whether a vehicle is a total loss.[20] Insurers typically declare a vehicle to be a total loss if the repair costs exceed a percentage of the pre-crash vehicle valuation.[21]  It is normally in the insurer's best interest to establish a higher vehicle value for this purpose, so the cost of repair is a smaller percentage of the pre-crash vehicle valuation.[22]  However, approximately 20 years ago, Progressive and other insurers determined that they could save large amounts of money by using WCTL reports that intentionally and substantially undervalued their insureds' vehicles.[23]

Progressive ordered a WCTL report for Plaintiff's Vehicle following the April 2019 car accident.[24]  The WCTL report for Plaintiff's Vehicle stated that the car's

---

[17]    *Id.* ¶ 51.

[18]    *Id.* ¶ 52.

[19]    *Id.* ¶ 53.

[20]    *Id.*

[21]    *Id.* ¶ 54.

[22]    *Id.* ¶ 55.

[23]    *Id.* ¶ 56.

[24]    *Id.* ¶ 24.

pre-crash cash value was $8,364.60.[25]   This amount was calculated by first determining the base value for the make and model of the Vehicle in the amount of $10,437.84, and then performing a "condition adjustment" to account for the condition of the Vehicle, which resulted in a reduction of $2,073.24.[26]   Plaintiff alleges that the condition adjustment is "statistically invalid" and wrongly deprived him of $2,073.24.[27]   Plaintiff alleges that the base value calculated as part of the WCTL report for the Vehicle is also "statistically invalid," but does not specify the amount by which it undervalued the Vehicle.[28]

Plaintiff brings this action individually and on behalf of all persons and entities that have made first-party claims since November 15, 2015 under an auto insurance policy issued within the state of Texas by Progressive whose vehicles were declared a total loss by Progressive and were valued using the WCTL.[29]   Plaintiff brings claims for breach of contract and bad faith against Progressive.[30]   Plaintiff brings claims for tortious interference with performance of a contract and breach of contract arising from Plaintiff's status as a third-party beneficiary against the

---

[25]     *Id.*

[26]     *Id.*

[27]     *Id.*

[28]     *Id.* ¶ 25.

[29]     *Id.* ¶ 74.

[30]     *Id.* ¶¶ 90-103.

Valuation Defendants.[31]   Plaintiff brings claims for civil conspiracy against all defendants.[32]

## II.   MOTION TO DISMISS STANDARD

A motion to dismiss under Rule 12(b)(6) is viewed with disfavor and is rarely granted.  *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).  The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true.  *Harrington*, 563 F.3d at 147.  The complaint must, however, contain sufficient factual allegations, as opposed to legal conclusions, to state a claim for relief that is "plausible on its face."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Patrick v. Wal-Mart, Inc.*, 681 F.3d 614, 617 (5th Cir. 2012).

When there are well-pleaded factual allegations, a court should presume they are true, even if doubtful, and then determine whether they plausibly give rise to an entitlement to relief.  *Iqbal*, 556 U.S. at 679.  Rule 8 "generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument."  *Skinner v. Switzer*, 562 U.S. 521, 530 (2011).  Additionally, regardless of how well-pleaded the factual allegations may be, they must demonstrate that the plaintiff is entitled to relief under a valid legal theory.  *See Neitzke v. Williams,* 490 U.S. 319, 327 (1989); *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997).

## III.   DISCUSSION

The Court first discusses Progressive's Motion, and then turns to the Valuation Defendants' Motion.

---

[31]     *Id.* ¶¶ 104-120.

[32]     *Id.* ¶¶ 121-127.

A.   **Progressive's Motion**

Progressive moves to dismiss all of Plaintiff's claims against it or, in the alternative, to stay the case under the primary jurisdiction doctrine. The Court will first discuss Plaintiff's claims against Progressive and then address the applicability of the primary jurisdiction doctrine.

1.   **Breach of Contract**

Plaintiff alleges that Progressive's use of WCTL in settling his claim constituted a breach of contract. To state a claim for breach of contract, a plaintiff must allege "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (quoting *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. Ct. App.—Houston [14th Dis.] 2005, pet. denied)). "Texas law does not require" a plaintiff identify the "specific contract sections that it contend[s] were breached." *Baker Hughes Proces and Pipeline Svcs. L.C.C. v. UE Compression, LLC*, 938 F.3d 661, 666 n.3 (5th Cir. 2019) (citing *Bowen v. Robinson*, 227 S.W.3d 86, 94 (Tex. App.—Houston [1st Dist.] 2006, pet. denied)). However, "if the court is unable to identify one or more specific contractual provisions at issue, then the 'plaintiffs fail to allege enough facts about the terms of a contract to raise their right to relief above the speculative level.'" *Hong Kong Aroma Star Int'l LLC v. Elta MD Inc.*, NO. 3:18-CV-2228-G, 2019 WL 2357529, at *4 (N.D. Tex. June 4, 2019) (citation omitted).

Here, Plaintiff alleges that Progressive breached its obligation to pay him the cash value of his totaled vehicle. Plaintiff alleges that Progressive's use of the WCTL methodology caused Progressive to substantially undervalue his vehicle and offer him less than its actual cash value. Progressive argues that Plaintiff has failed to state a claim for breach of contract because he has not specifically identified the

contract provision Progressive is alleged to have breached and because Plaintiff has not specifically alleged the amount he claims Progressive underpaid him.

Progressive's first argument fails.  Plaintiff's complaint states that his policy with Progressive "required Progressive to pay the 'actual cash value' of the total loss to the Vehicle under Section IV 'Damage to Vehicle,' including 'Limits of Liability'" and that "Progressive has failed to pay Actual Cash Value as required by its Policy to Plaintiff."[33]  These allegations are sufficient to identify the contract provision Plaintiff alleges Progressive breached.

Progressive's second argument—that Plaintiff has not specifically alleged the amount by which he was underpaid—fails as well.  Progressive's argument centers around the contention that Plaintiff did not explicitly allege in his Complaint how much he thinks Progressive should have paid him for his claim and did not explicitly allege that he accepted Progressive's offer.  However, these facts can be inferred through a liberal construction of Plaintiff's Complaint.

The Complaint alleges that Progressive "wrongly deprived Plaintiff of $2,073.24" through the condition adjustment in the WCTL report for his Vehicle.[34]  Progressive argues that this allegation does not establish the amount by which Plaintiff argues he was underpaid because Plaintiff challenges not only the condition adjustment in the WCTL report, but also the WCTL report's calculation of his Vehicle's base value, from which the condition adjustment was deducted.  Plaintiff claims that the methodology used to calculate base value in WCTL reports is "statistically invalid," but does not allege  that the base value calculated for his

---

[33]     Complaint ¶¶ 21, 93.

[34]     Complaint ¶ 24.

Vehicle was necessarily incorrect.[35]   Construed liberally and in the light most favorable to Plaintiff, the Complaint states that Progressive's use of the WCTL methodology as a whole wrongly deprived Plaintiff of $2,073.24.   Additionally, it can be fairly inferred that Plaintiff accepted Progressive's offer of the amount stated in the WCTL report from his allegation that Progressive's reliance on the WCTL report caused him to be underpaid.   Plaintiff has stated a claim against Progressive for breach of contract.

### 2.   Bad Faith

Plaintiff alleges that Progressive's use of the WCTL methodology in settling claims constitutes bad faith.   In Texas, a bad faith claim is "more commonly called a breach of duty of good faith and fair dealing claim."   *Carroll v. State Farm Mut. Auto. Ins. Co.*, No. 4:18-CV-458-A, 2018 WL 4100939, at *2 (N.D. Tex. Aug. 28, 2018) (citing *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 50-51 (Tex. 1997)). The duty of good faith and fair dealing "does not arise from the provisions of the insurance contract, but is an obligation imposed by law as the result of a special relationship between the insurer and the insured, and it is thus separate from a claim for breach of the underlying insurance contract."   *Hudgens v, Allstate Texas Lloyd's*, No. H–11–2716, 2012 WL 2887219, at *6 (S.D. Tex. July 13, 2012) (citing *Viles v. Security Nat'l Ins. Co.*, 788 S.W.2d 566, 567 (Tex. 1990)).   In order to state a claim for bad faith against an insurer, plaintiff must allege "that a carrier failed to attempt to effectuate a settlement after its liability has become reasonably clear" or failed to pay a claim where "the insurer knew or should have known that it was reasonably clear that the claim was covered."   *Giles*, 950 S.W.2d at 55-56.   An insurer may also act in bad faith by failing to conduct a reasonable investigation of its insureds' claims.   *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456 (5th Cir.

---

[35]      *Id.*

1997).  Insurers may use third-party experts to investigate or determine the value of claims, but an insurer's reliance on a third-party's report will not shield the insurer from liability for bad faith "if the insurer had some reason to doubt the report."  *City of Keller v. Wilson*, 168 S.W.3d 802, 818 (Tex.2005) (quoting *State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, 448 (Tex. 1997)); *Nicolau*, 951 S.W.2d at 448–49 (finding insurer acted in bad faith by hiring expert it knew would not fairly investigate insured's claim).

Progressive argues that Plaintiff has not stated a claim for bad faith because he does not allege Progressive denied his claim, delayed paying his claim, or failed to reasonably investigate liability for his claim.  At most, Progressive argues, Plaintiff has alleged a dispute about the extent of coverage, which does not amount to bad faith.  In response, Plaintiff argues that Progressive's reliance on WCTL reports constitutes a failure to reasonable investigate his claim because Progressive knows those reports tend to undervalue its insureds' vehicles.

Here, Plaintiff alleges that Progressive acted in bad faith by using valuation reports to intentionally and improperly reduce payment to insureds whose vehicles have been deemed total losses.[36]  Plaintiff alleges that Progressive relies on the WCTL methodology to value total loss vehicles even though it knows the WCTL methodology is "statistically invalid."[37]  Plaintiff has alleged that the valuations produced by the WCTL methodology are substantially lower than those produced by industry-standard guidebooks or methodologies, that other "players" in the automotive industry do not use WCTL methodology to value used cars, and that Progressive uses the WCTL methodology to value its insureds' total loss auto claims

---

[36]    Complaint ¶¶ 98-101.

[37]    *Id.* ¶¶ 98-99.

because it produces lower values than other available methods.[38]  Plaintiff has stated a claim for bad faith against Progressive.

### 3.   Civil Conspiracy

Plaintiff alleges that Progressive is also liable for civil conspiracy because it worked with the Valuation Defendants to develop the WCTL methodology and apply it to his claim.  "To establish a civil conspiracy, the Plaintiff must show that the Defendants agreed on a goal or a course of action, and that one of them committed an unlawful, overt act in furtherance of the goal or course of action. . . . Additionally, since civil conspiracy is a derivative tort, the Plaintiff must show that the Defendants were liable for some underlying tort in order to prevail on this cause of action."  *Ball v. United Parcel Service, Inc.*, No. H–10–1253, 2011 WL 1642148, at *2 (S.D. Tex. Apr. 29, 2011); *see also Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 142 (Tex. 2019).

Progressive argues that Plaintiff's civil conspiracy claim should be dismissed because he has failed to allege an underlying tort and any cognizable damages. Progressive's arguments are not persuasive.  As discussed above, Plaintiff has stated a claim for bad faith, a tort which may support his civil conspiracy claim.[39]  Plaintiff has also alleged that he was deprived of $2,073.24 as a result of Progressive's bad faith.  Plaintiff has stated a claim for civil conspiracy.

---

[38]   *Id.* ¶¶ 32, 51, 58.

[39]   As discussed below, Plaintiff's claim against the Valuation Defendants for tortious interference with contract also constitutes an underlying tort supporting his civil conspiracy claim.  *Tilton v. Marshall*, 925 S.W.2d 672, 281 (Tex. 1996) ("a defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable.").

### 4.    Primary Jurisdiction

Progressive argues that, to the extent Plaintiff has stated a claim, the case should be stayed under the primary jurisdiction doctrine.  "Primary jurisdiction is a judicially created doctrine whereby a court of competent jurisdiction should dismiss or stay an action pending a resolution of some portion of the action by an administrative agency." *Wagner & Brown v. ANR Pipeline Co.*, 837 F.2d 199, 201 (5th Cir. 1988).  Primary jurisdiction "is essentially a form of abstention," under which "a district court with subject matter jurisdiction may, under appropriate circumstances, defer to another forum, such as an administrative agency, which also has non-exclusive jurisdiction, based on its determination that the benefits of obtaining aid from that other forum outweigh the need for expeditious litigation." *Occidental Chem. Corp. v. Louisiana Pub. Service Com'n*, 810 F.3d 299, 302 (5th Cir. 2016).

"No fixed formula exists for applying the doctrine of primary jurisdiction." *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956).  Primary jurisdiction "is a flexible doctrine to be applied at the discretion of the district court." *Wagner & Brown v. ANR Pipeline Co.*, 837 F.2d 199, 201 (5th Cir. 1988) (citing *El Paso Natural Gas Co. v. Sun Oil Co.*, 708 F.2d 1011, 1020 (5th Cir. 1983)).  The Fifth Circuit has recognized that agency referral is favored if "(a) it will promote even-handed treatment and uniformity in a highly regulated area, or when sporadic action by federal courts would disrupt an agency's delicate regulatory scheme; or (b) the agency possesses expertise in a specialized area with which the courts are relatively unfamiliar." *Elam v. Kansas City S. Ry. Co.*, 635 F.3d 796, 811 (5th Cir. 2011).

Here, Progressive argues that Plaintiff's claims involve complex questions about the appropriate methodology for determining the cash value of total loss vehicles.  Progressive claims that these "technical and intricate" questions about the validity of the WCTL methodology are better suited for resolution by the Texas

Department of Insurance ("TDI") than the courts. In response, Plaintiff argues that this case is a straightforward claim for breach of contract, coupled with extra-contractual claims for bad faith and conspiracy, and agency expertise is not needed to resolve his claims.

Progressive's argument is persuasive. Plaintiff's claims are predicated on a finding that the WCTL methodology does not yield the actual cash value of total loss vehicles. Determining the appropriate methodology to calculate the cash value of total loss vehicles is squarely within the regulatory authority delegated to the TDI. The Texas Legislature has established a detailed statutory scheme governing he insurance industry, including auto insurance. *See* TEX. INS. CODE ANN. § 541.001 *et seq*. Specifically, the Legislature has delegated to TDI the authority to "administer and enforce" the Texas Insurance Code and "adopt and enforce reasonable rules" governing insurance practices, including claims settlement practices. *Id.* §§ 541.401, 542.014. The TDI is staffed with experts trained in handling complicated insurance problems, which "involve many more complex issues than simple contract interpretation." *Beacon Nat'l Ins. Co. v. Montemayor*, 86 S.W.3d 260, 272 (Tex. Ct. App.—Austin 2002, no pet.).

Moreover, interests of uniformity weigh in favor of staying the case under the primary jurisdiction doctrine. The Supreme Court of Texas has recognized that uniform application of laws and regulations is particularly important in the insurance industry, especially where, as here, the policy provision or practice is used by different insurers across the state. *See National Union Fire Ins. Co. v. CBI Indus.*, 907 S.W.2d 517, 522 (Tex. 1995). Plaintiff's Complaint alleges that insurers other than Progressive also use WCTL reports to settle claims by their insureds.[40] There is a risk that courts and juries may reach inconsistent results in determining whether

---

[40]     Complaint ¶¶ 56, 123.

the WCTL methodology is reliable way to determine cash value of total loss vehicles.   For example, even if the WCTL methodology undervalued Plaintiff's Vehicle as he alleges, it may not systematically undervalue all makes and models of cars in all conditions.   Because Plaintiff's claims "potentially impact all insurers writing [automobile] coverage in Texas" and could lead to inconsistent results they should "first be addressed in a broader administrative proceeding."   *Beacon*, 86 S.W.3d at 272.

Plaintiff argues that this case is analogous to *Tolar v. Allstate Texas Lloyd's Company*, 772 F. Supp. 2d 825, 828-29 (N.D. Tex. 2011).   There, a group of insureds brought a class action breach of contract claim arising out of storm damage to property insured by Allstate.   Plaintiffs argued that Allstate breached their policy terms by depreciating general contractor overhead, profit and sales tax in calculating the actual cash value for payment of claims.   *Id.* at 831.   The court rejected Allstate's argument that the case should be stayed under the primary jurisdiction doctrine because it was "a straightforward contract interpretation case which d[id] not involve particularly complex issues under the purview of the TDI."   *Id.* at 833.

*Tolar* is readily distinguishable because the policies at issue there "unambiguously allow[ed]" for the depreciation of general contractor overhead, profit and sales tax.   *Id.*   Thus, *Tolar* was in fact a straightforward breach of contract case.   Here, on the other hand, Plaintiff's claims ultimately turn on the validity of a complex method for adjusting and settling claims.   Furthermore, the methodology at issue here is used by multiple other insurers, necessitating the type of uniform and consistent rule that TDI is better equipped to provide.   Plaintiff's claims against Progressive are stayed under the primary jurisdiction doctrine.

### B.   The Valuation Defendants' Motion

The Valuation Defendants move to dismiss Plaintiff's claims against them for tortious interference with contract, breach of contract, and civil conspiracy.

### 1.    Tortious Interference

Plaintiff claims that the Valuation Defendants tortuously interfered with his contract with Progressive by developing a valuation system designed to systematically undervalue vehicles.  "The elements of a cause of action for tortious interference with a contract are: (1) the existence of a contract subject to interference, (2) the occurrence of an act of interference that was willful and intentional, (3) that the act was a proximate cause of the plaintiff's damage, and (4) that actual damage or loss occurred." *Central States Logistics, Inc. v. BOC Trucking, LLC*, 573 S.W.3d 269, 278 (Tex. App.—Houston [1st Dist.] 2018, pet. denied]) (citing *Holloway v. Skinner*, 898 S.W.2d 793, 795–96 (Tex. 1995)).  The Valuation Defendants argue that Plaintiff's tortious interference claim should be dismissed because Plaintiff has not plausibly alleged that the Valuation Defendants knew about his contract with Progressive and has not alleged that the Valuation Defendants intended to interfere with that contract.  The Court will consider each argument in turn.

To establish the element of intent, a plaintiff must show that the interfering party had actual knowledge of the contract and plaintiff's interest in it or knowledge of facts and circumstances that would lead a reasonable person to believe the existence of the contract and Plaintiff's interest in it.  *Dickens v. Jason C. Webster, P.C.*, No. 05-17-00423-CV, 2018 WL 6839568, at *7 (Tex. App.—Dallas Dec. 31, 2018, no pet.).  Here, Plaintiff has expressly alleged facts that the Valuation Defendants knew Progressive entered into insurance policies with its insureds and had actual knowledge of Plaintiff's identity.[41]  Taken as true and construed in the

---

[41]    Complaint ¶ 106, ¶ 107 ("J.D. Power and Mitchell had actual knowledge of the identity of Plaintiff and each Texas Class member as Progressive insured.  This knowledge is demonstrated by the fact that J.D. Power and Mitchell prepared the Plaintiff's WCTL Report, which specifically identified Plaintiff and valued

light most favorable to Plaintiff, the Court cannot conclude as a matter of law that these allegations are insufficient to establish that the Valuation Defendants had actual or constructive knowledge of Progressive's insurance contracts with insureds, or that such constructive knowledge is insufficient to state a claim for relief at this preliminary stage in the case.

The Valuation Defendants also argue that Plaintiff has not alleged that they intentionally interfered in his contract with Progressive.  "To establish a willful and intentional act of interference, there must be evidence that the defendant was more than a willing participant—the defendant must have knowingly induced one of the contracting parties to breach its obligations under a contract." *Lazer Spot, Inc. v. Hiring Partners, Inc.*, 387 S.W.3d 40, 53 (Tex. App.—Texarkana 2012, pet. denied). Merely inducing a party to exercise rights under a contract does not amount to tortious interference. *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 431 (Tex. 1997) (finding that actions could not be tortious interference as a matter of law where the contract in question specifically allowed for those actions); *Greenville Automatic Gas Co. v. Automatic Propane Gas and Supply, LLC*, 465 S.W.3d 778, 787 (Tex. App.—Dallas 2015, no pet.) (hiring of competitor's employee could not be tortious interference with employment agreement between competitor and employee where agreement was for at-will employment without non-compete restrictions); *Lazer Spot, Inc.*, 387 S.W.3d at 53 (same).

Here, Plaintiff alleges that the Valuation Defendants "knowingly and intentionally s[old] to Progressive a statistically invalid and wholly arbitrary total loss valuation product for the specific purpose of enabling Progressive to underpay

---

Plaintiff's Vehicle. The same is true for the WCTL Reports of the other Texas Class Members.").

the claims of total loss insureds, including Plaintiff."[42]  Taken as true and construed in the light most favorable to Plaintiff, these allegations establish that the Valuation Defendants knowingly and intentionally induced Progressive to breach its contract with Plaintiff.  While further factual development on this point will be necessary, Plaintiff need not plead the Valuation Defendants' intent with specificity at this early stage.[43]  Taken as true and construed in the light most favorable to Plaintiff, the allegations in Plaintiff's Complaint are sufficient at this preliminary stage to state a claim against the Valuation Defendants for tortious interference.

### 2.  Breach of Contract

Plaintiff brings a claim for breach of contract against the Valuation Defendants under the theory that he was a third-party beneficiary to the contract between the Valuation Defendants and Progressive to provide Progressive with WCTL reports.  Under Texas law, third-parties may enforce the terms of a contract if they are either a donee or creditor beneficiary of the contract, and not someone who is only benefitted incidentally by performance of the contract.  *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999) ("One is a donee beneficiary if the performance promised will, when rendered, come to him as a pure donation. . . . If, on the other hand, that performance will come to him in satisfaction

---

[42]    Complaint ¶ 110.

[43]    *Compare Richardson v. Progressive Am. Ins. Co.*, No: 2:18-cv-715-FtM-99MRM, 2019 WL 2287955, at *6 (M.D. Fla. May 29, 2019) (finding in a similar case that Mitchell's and J.D. Power's argument that plaintiffs had not sufficiently alleged tortious interference "c[ould] be easily disposed of" because "plaintiffs expressly allege that J.D. Power and Mitchell had knowledge that Progressive entered into insurance policies with its insureds and that defendants acted intentionally."); *with Jones v. Progressive Cas. Ins. Co.*, No. 16-CV-06941-JD, 2018 WL 4521919, at *12 (N.D. Cal. Sept. 19, 2018) (dismissing claim for tortious interference where plaintiff made no allegations "that Mitchell intended to disrupt his policy with Progressive, or knew that interference was likely to occur.").

of a legal duty owed to him by the promisee, he is a creditor beneficiary. . . . [T]his duty may be an 'indebtedness, contractual obligation or other legally enforceable commitment' owed to the third party.") (citations omitted). "The fact that a person is directly affected by the parties' conduct, or that he may have a substantial interest in a contract's enforcement, does not make [a party] a third-party beneficiary." *Maddox v. Vantage Energy, LLC*, 361 S.W.3d 752, 757 (Tex. App.—Fort Worth 2012, pet. denied). The contracting parties' intention to "confer a direct benefit to a third party must be clearly and fully spelled out or enforcement by the third party must be denied." *Id.* Under Texas law, courts presume that parties contract only for their own benefit. *Basic Capital Mgmt., Inc. v. Dynex Commercial, Inc.*, 348 S.W.3d 894, 900 (Tex. 2011). "All doubts must be resolved against conferring third-party beneficiary status." *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011).

The Valuation Defendants argue that Plaintiff's breach of contract claim against them should be dismissed because he has not plausibly alleged that he was a third-party beneficiary to any contract between Progressive and the Valuation Defendants. The Valuation Defendants also argue that Plaintiff's allegations on this point are inherently contradictory because Plaintiff claims to be a beneficiary of an agreement he also claims was designed to undervalue his Vehicle.

The Valuation Defendants' arguments are persuasive. Plaintiff's barebones allegation that he and the putative class members "are intended beneficiaries of the Agreement between Progressive and Mitchell" is insufficient to overcome the presumption against third-party beneficiaries under Texas law. Complaint ¶ 116; *Basic*, 348 S.W.3d at 900. The fact that Plaintiff might derive some incidental benefit from Progressive's outsourcing of total loss valuations is insufficient to make

him a third-party beneficiary to that contract.  *See Maddox*, 361 S.W.3d at 757.[44]
Plaintiff's breach of contract claims against the Valuation Defendants are dismissed
without prejudice.

### 3.    Civil Conspiracy

As discussed above, to state a claim for civil conspiracy, Plaintiff must allege
that "Defendants agreed on a goal or a course of action, and that one of them
committed an unlawful, overt act in furtherance of the goal or course of action."
*Ball*, 2011 WL 1642148, at *2.  The Valuation Defendants argue that Plaintiff's civil
conspiracy claim should be dismissed because it sounds in fraud and fails to satisfy
the heightened pleading standards of Federal Rule of Civil Procedure 9(b)
("Rule 9(b)").  In response, Plaintiff argues that his conspiracy claim is not based on
an underlying fraud and is thus not subject to the requirements of Rule 9(b).

Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with
particularity the circumstances constituting fraud or mistake."  Civil conspiracy to
commit a tort that sounds in fraud must be pleaded with particularity in accordance
with Rule 9(b).  *Castillo v. First City Bancorporation of Texas, Inc.*, 43 F.3d 953,
961 (5th Cir. 1994).  Additionally, Rule 9(b) applies to all allegations of fraudulent
conduct, "whether part of a claim of fraud or not."  *Lone Star Ladies Inv. Club v.
Schlotzsky's, Inc.*, 238 F.3d 363, 368 (5th Cir. 2001); *American Realty Trust, Inc. v.
Travelers Cas. & Sur. Co. of Am.*, 362 F. Supp. 2d 744, 751 (N.D. Tex. 2005).

---

[44]    Notably, Plaintiff's allegations in this regard are inherently contradictory.  Plaintiff
claims to be a beneficiary to an agreement among J.D. Power, Mitchell, and
Progressive to provide WCTL reports for total loss claims by Progressive's
insureds, but also claims that WCTL reports systematically undervalue vehicles, and
that the agreement among Defendants is part of a "wrongful and improper scheme"
that caused him harm.  The Court does not decide whether such fundamentally
contradictory allegations pass muster.  *But see Associated Builders, Inc. v. Ala.
Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974); *Rosas v. Bexar County*, No. 5:14-CV-
1082-DAE, 2015 WL 1955406, at *5 (W.D. Tex. Apr. 29, 2015).

Either Plaintiff's claim against Progressive for bad faith or Plaintiff's claim against the Valuation Defendants for tortious interference with contract independently constitutes an underlying tort that supports his civil conspiracy claim against Defendants for purposes of the motions to dismiss. *See Tilton*, 925 S.W.2d at 281 ("a defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable."). Federal courts in Texas have held that the requirements of Rule 9(b) apply to bad faith claims against insurers under the Texas Insurance Code and common law.[45] Rule 9(b) also applies to claims for tortious interference based on fraudulent misrepresentation.[46]

Plaintiff has properly stated a civil conspiracy claim under the heightened pleading requirements of Rule 9(b). Plaintiff has alleged with sufficient specificity

---

[45] *See Ripley v. State Farm Lloyds*, No. 4:19-CV-1066-A, 2020 WL 1643400, at *2 n.2 (N.D. Tex. Apr. 1, 2020) ("Plaintiffs argue that Rule 9(b) does not apply [to bad faith claims]. They are mistaken."); *Trejo v. Allstate Fire and Cas. Ins. Co.*, SA-19-CV-00180-FB-ESC, 2019 WL 4545614, at *7 (W.D. Tex. Sept. 19, 2019) (finding that plaintiff's bad faith claim under Texas Insurance Code was subject to Rule 9(b)); *Jones v. Allstate Vehicle and Prop. Ins. Co.*, No. 4:17-CV-00199-ALM-CAN, 2017 WL 3276384, at *2 n.1 (E.D. Tex. July 13, 2017) ("[T]he Court assumes that Plaintiff's bad faith and statutory claims are governed by the Rule 9(b) pleading standards."); *Frith v. Guardian Life Ins. Co. of Am.*, 9 F. Supp. 2d 734, 742 (S.D. Tex. 1998) ("Claims alleging violations of the Texas Insurance Code and the Deceptive Trade Practices Act . . . are subject to the requirements of Rule 9(b).").

[46] *Rail Scale, Inc. v. Balanced Railscale Certification, LLC*, No. 2:15-CV-02117-RSP, 2017 WL 319077, at *4 (E.D. Tex. Jan. 23, 2017) (finding that counterclaim for tortious interference based on alleged fraudulent misrepresentation satisfied the requirements of Rule 9(b) where defendants identified the "who, what, when, where, and how" of the alleged fraudulent statement); *Leonardo Worldwide Corp. v. Pegasus Solutions, Inc.*, No. 3:14-CV-2660-N, 2015 WL 13469916, at *2 (N.D. Tex. Jan. 9, 2015) (explaining that Rule 9(b) does not apply to a claim for tortious interference where the claim does not rest on a fraudulent misrepresentation).

the circumstances surrounding the underlying bad faith and tortious interference claims, namely, that the Valuation Defendants provided Progressive with intentionally inaccurate WCTL methodology to generate reports about insureds' cars' values with the intent Progressive use those reports to underpay its insureds. Plaintiff has also alleged with specificity a meeting of the minds among Defendants, specifically, the agreement between Progressive and the Valuation Defendants for use of WCTL reports.  Plaintiff has stated a claim under the heightened pleading standard of Rule 9(b) for civil conspiracy against the Valuation Defendants.[47]

## IV.   <u>CONCLUSION</u>

Plaintiff has stated claims for breach of contract and bad faith against Progressive and a claim for civil conspiracy against all defendants.  However, Plaintiff's claims raise complex questions about the proper method for valuing vehicles judged to be total losses.  Courts and juries could come to differing conclusions about this question, but the public interest requires a uniform, consistent answer.  The case is stayed so that the TDI may first determine whether the WCTL methodology is an appropriate means of calculating the pre-crash cash value of total loss vehicles.  For the foregoing reasons it is

**ORDERED** that Progressive's Motion is **granted in part and denied in part**.  Plaintiff has stated claims against Progressive for breach of contract, bad faith, and civil conspiracy.  However, these claims are stayed under the primary jurisdiction doctrine.  It is further

**ORDERED** that the Valuation Defendants' Motion is **granted in part and denied in part**.  Plaintiff's claims against the Valuation Defendants for breach of

---

[47]   Although Progressive does not raise the issue in its briefing, the Court finds that Plaintiff has satisfied the requirements of Rule 9(b) in pleading his bad faith and civil conspiracy claim against Progressive for the reasons detailed above.

contract are **dismissed without prejudice**.   Plaintiff has stated claims against the Valuation Defendants for tortious interference with contract and civil conspiracy. However, these claims are stayed under the primary jurisdiction doctrine.   It is further

   **ORDERED** that on or before **July 10, 2020**, Plaintiff must file with the Texas Department of Insurance an administrative complaint against Progressive based on Progressive's use of the WCTL methodology to value Plaintiff's Vehicle.   Plaintiff shall file with the Court on or before **July 17, 2020** a status report attaching a copy of his administrative complaint against Progressive.   Plaintiff's failure to timely file an administrative complaint against Progressive or to file a copy of any such complaint with the Court will result in his claims being dismissed without prejudice. It is further

   **ORDERED** that Plaintiff and Progressive shall submit a joint status report regarding the progress of Plaintiff's administrative complaint and any rulings by TDI **every 90 days** thereafter.

   **SIGNED** at Houston, Texas, this 11th day of **June, 2020**.


                  _____
                   NANCY F. ATLAS
             SENIOR UNITED STATES DISTRICT JUDGE

P:\ORDERS\1-2020\536MDism.docx   200610.2354