## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| BASIT MIAN, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:20-00536 |
| | § | |
| PROGRESSIVE COUNTY MUTUAL | § | |
| INSURANCE COMPANY, J.D. | § | |
| POWER, and MITCHELL | § | |
| INTERNATIONAL, INC., | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Before the Court in this putative class action for breach of contract and bad faith is Plaintiff Basit Mian's ("Plaintiff's") Motion for Reconsideration [Doc. # 45] ("Motion"). Defendant Progressive County Mutual Insurance Company ("Progressive") responded,[1] and Plaintiff replied.[2] The Motion is ripe for decision. Based on the parties' briefing, pertinent matters of record, and relevant legal authority, the Court **denies** Plaintiff's Motion.

---

[1]     Progressive County Mutual Insurance Company's Opposition to Plaintiff's Motion to Reconsider [Doc. # 46] ("Response").

[2]     Plaintiff Basit Mian's Reply Brief in Support of Motion for Reconsideration [Doc. # 49] ("Reply").

# I.    BACKGROUND

A full summary of this case's factual background can be found in the Court's June 10, 2020 Memorandum and Order [Doc. # 43] (the "Prior Order").

Plaintiff is the former owner of a vehicle insured by Progressive and damaged in a car accident in April 2019.[3]   Following the accident, Progressive determined that the Vehicle was a "total loss."[4]   Progressive used a Work Center Total Loss ("WCTL") report—a valuation methodology developed through a joint partnership between J.D. Power and Mitchell International, Inc. (the "Valuation Defendants" and, together with Progressive, "Defendants")—to determine that the pre-crash cash value of Plaintiff's vehicle was $8,364.60.[5]

Plaintiff filed this action on behalf of himself and others similarly situated claiming that Progressive's WCTL reports were "statistically invalid and do[] not result in a proper valuation for total loss vehicles in Texas."[6]   Plaintiff brought claims for breach of contract and bad faith against Progressive,[7] claims for tortious

---

[3]    Plaintiff's Original Petition [Doc. # 1-3] ("Complaint") ¶¶ 17-19.

[4]    *Id.* ¶ 19.   Vehicles are typically determined to be "total losses" when the estimated repair costs exceed either the value of the vehicle or 80% of the pre-crash value of the vehicle.   *Id.* ¶ 54.

[5]    *Id.* ¶¶ 24, 28.

[6]    *Id.* ¶ 35.

[7]    *Id.* ¶¶ 90-103.

interference with performance of a contract and breach of contract against the Valuation Defendants,[8] and claims for civil conspiracy against all Defendants.[9]

Defendants moved to dismiss Plaintiff's claims or, alternatively, to stay the case under the primary jurisdiction doctrine.[10]  The Court granted in part and denied in part Defendants' motions, dismissing without prejudice Plaintiff's claim against the Valuation Defendants for breach of contract and staying the remaining claims under the primary jurisdiction doctrine.[11]  Plaintiff now moves the Court to reconsider its Prior Order staying the case.[12]

## II.   **LEGAL STANDARD**

The Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration.  *See Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328 n.1 (5th Cir. 2004).  Courts, however, retain the power to revise interlocutory orders before entering judgment adjudicating the parties' claims, rights, and liabilities under Rule 54(b), and a motion urging the court to change an order or judgment is generally

---

[8]     *Id.* ¶¶ 104-120.

[9]     *Id.* ¶¶ 121-127.

[10]    *See* Progressive County Mutual Insurance Company's Motion to Dismiss or, Alternatively, to Stay [Doc. # 19]; J.D. Power's and Mitchell International, Inc.'s Motion to Dismiss Pursuant to Rule 12(b)(6) [Doc. # 21].

[11]    *See* Prior Order at 21-22.

[12]    *See* Motion.

considered a motion to alter or amend under Rule 59(e).  *See, e.g.*, *Hazim v. Schiel & Denver Publishing Ltd.*, H-12-1286, 2015 WL 5227955, at *2 (S.D. Tex. Sept. 8, 2015).

Rule 59(e) "serves the narrow purpose of allowing a party to [1] correct manifest errors of law or fact or [2] to present newly discovery evidence." *Templet v. HyrdoChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004).  Motions under Rule 59(e) are "not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment."  *Id.*  To be entitled to relief under Rule 59(e), Plaintiff "must clearly establish" either a "manifest error of law or fact," or "present newly discovered evidence."  *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863-64 (5th Cir. 2003).

## III.  <u>DISCUSSION</u>

Plaintiff argues the Court committed manifest error and should revise its ruling on primary jurisdiction for three reasons.  Plaintiff contends (1) the Texas Department of Insurance ("TDI") has no jurisdiction to review the WCTL methodology; (2) legal exceptions preclude application of the primary jurisdiction doctrine in this case, and (3) the Court failed to balance the benefits of agency

determination with the costs to the parties before invoking the primary jurisdiction doctrine.[13]  The Court addresses each of Plaintiff's arguments in turn.

### A.   Jurisdiction of the Texas Department of Insurance

Plaintiff first argues that the Court's decision to stay the case in favor of resolution of certain issues by TDI was manifest error because TDI does not have jurisdiction to review the WCTL methodology.[14]  Plaintiff claims that TDI lacks jurisdiction to review the WCTL methodology because there is no Texas law or regulation specifically describing how insurers should estimate actual cash value of total loss vehicles.[15]  Plaintiff's argument is not persuasive.

Application of the primary jurisdiction doctrine does not require a statute or regulation on the *exact* question at issue, only that the question fall within the scope of the agency's jurisdiction.  *See U.S. v. Western Pac. R. Co.*, 352 U.S. 59, 63-64 (1956) ("Primary jurisdiction . . . applies where a claim is originally cognizable in the courts, and . . . enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body.").  Indeed, if TDI had already promulgated precise guidance on how to estimate the cash value of total loss vehicles that regulatory guidance

---

[13]   Motion at 3-6.

[14]   *Id.* at 3.

[15]   *Id.*

would inform courts in determining the legality of the WCTL procedures and assumptions and there would be less reason to refer that question to the agency. TDI has broad authority to regulate insurance practices including claims settlement practices.[16]  Plaintiff's claims fall squarely within the arena of Progressive's

---

[16]   Title 10, Subtitle C of the Texas Insurance Code sets out a statutory scheme governing automobile insurance, including policy forms, *id.* § 1952.051, required coverage, *id.* § 1952.0515, the types of personal injuries covered by policies with personal injury protection; *id.* § 1952.151the manner in which motor vehicles must be repaired pursuant to an insurance policy, *id.* § 1952.301-05, when insurers must make payment of benefits, *id.* § 1952.156, and penalties for failure to timely pay claims, *id.* § 1952.157.  The Subtitle also gives TDI broad authority to "adopt and enforce reasonable rules necessary to carry out the provisions of this subtitle. *Id.* § 1951.002.

Title 5 of the Texas Insurance Code, titled "Protection of Consumer Interests," prohibits all insurers from engaging in certain deceptive or unfair business practices, including "unfair settlement practices" such as "misrepresenting to a claimant a material fact or policy provision relating to coverage at issue." *Id.* § 541.060(1). Title 5 gives TDI authority to "examine and investigate the affairs of a person engaged in the business of insurance in this state to determine whether the person has or is engaged in an unfair method of competition or unfair or deceptive act or practice," *id.* § 541.101, and to "adopt and enforce reasonable rules the commissioner determines necessary to accomplish the purposes of this chapter." § 541.401.

TDI has used its broad authority to issue bulletins explaining the Department's position on insurance settlement practices, including how to calculate actual cash value of covered property, Commissioner's Bulletin # B-00450-98 (June 12, 1998), *available at* https://www.tdi.texas.gov/bulletins/1998/b-0045-8.html, and Commissioner's Bulletin # B-0068-08 (Sept. 29, 2008), *available at* https://www.tdi.texas.gov/bulletins/2008/cc70.html, whether insurers must pay for an automobile's diminished value, Commissioner's Bulletin # B-0027-00 (April 6, 2000), *available at* https://www.tdi.texas.gov/bulletins/2000/b-0027-0.html, and insurers' contracts with auto repair facilities and related disclosures to consumers, Commissioner's Bulletin # B-0026-11 (June 20, 2011), *available at* https://www.tdi.texas.gov/bulletins/2011/cc25.html and Commissioner's Bulletin

6

settlement practices, and the Court concludes it was not manifest error to find TDI has jurisdiction to review the WCTL methodology.

Plaintiff next argues that even if TDI does have jurisdiction to review the WCTL methodology, referring Plaintiff's claims to the agency does not further the fundamental purposes of the primary jurisdiction doctrine.[17]

Referral under the primary jurisdiction doctrine is appropriate where "(a) it will promote even-handed treatment and uniformity in a highly regulated area, or when sporadic action by federal courts would disrupt an agency's delicate regulatory scheme; or (b) the agency possesses expertise in a specialized area with which the courts are relatively unfamiliar." *Elam v. Kansas City S. Ry. Co.*, 635 F.3d 796, 811 (5th Cir. 2011); *see also Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 221 (Tex. 2002).

Referral of Plaintiff's claims to TDI furthers both of these goals.  The Supreme Court of Texas has recognized that uniform application of laws and regulations is particularly important in the insurance industry, especially where, as here, the policy provision or practice is used by different insurers across the state.  *See National Union Fire Ins. Co. v. CBI Indus.*, 907 S.W.2d 517, 522 (Tex. 1995); *Beacon Nat.*

---

# B-0022-07    (May    22,    2007)    *available    at* https://www.tdi.texas.gov/bulletins/2007/cc21.html.

[17]    Motion at 3-4.

*Ins. Co.*, 86 S.W.3d at 272 ("[T]he supreme court [of Texas] has recognized the importance of uniformity, especially when policy provisions are identical across the country.").  "[S]poradic action" by courts determining the propriety of a valuation methodology is unlikely to result in uniformity in the context of used cars, where variables such as make, model, year, condition, mileage, and upgrades lead to large differences in value among vehicles.  *Elam*, 635 F.3d at 811.  For example, the WCTL methodology could fairly value certain cars, but systematically undervalue other types of cars.  A court asked to opine on the fairness of the WCTL methodology in the context of a one-year-old Toyota Camry could reach a very different conclusion than a Court asked to opine on the fairness of the methodology as it relates to a thirty-year-old sports car.  TDI, on the other hand, has the authority and expertise to evaluate the WCTL methodology generally and ensure that its conclusions are applied consistently throughout the state.  *Beacon Nat. Ins. Co.*, 86 S.W.3d at 272 ("Resolution of the issues raised by [insurer] potentially impact all insurers writing homeowner coverage in Texas.  The issues should first be addressed in a broader administrative proceeding, not in two party litigation.").

Plaintiff argues that TDI does not possess expertise to evaluate the WCTL methodology because, he claims, this case involves "complex mathematical, statistical and electronic database development and analysis issues, not insurance

issues."[18]   Plaintiff's argument ignores the obvious context in which those mathematical, statistical, and database development and analysis issues arise.  The settlement of an insurance claim does not cease to be an insurance issue simply because the focus of the dispute necessitates mathematical or statistical calculations. Plaintiff's claims turn on the propriety of an insurance claims settlement practice on which TDI is equipped to opine.[19]   The Court concludes that it was not manifest error to find that TDI had jurisdiction to investigate the WCTL methodology.

Plaintiff argues this case is analogous to *Litton Systems v. Southwestern Bell Telephone Co.*, 539 F.2d 418 (5th Cir. 1976), where the Fifth Circuit reversed as an abuse of discretion the district court's stay of the case under the primary jurisdiction doctrine.  The plaintiff in that case claimed that the defendant's tying of telephone

---

[18]   Motion at 2.

[19]   The Texas Court of Appeals came to a similar conclusion in *Beacon National Insurance Co.*, finding that an insurer's claim that it had no duty to repair or replace a multi-layer roof under the terms of an insurance policy:

> [i]nvolve[d] many more complex issues than simple contract interpretation.  TDI's enforcement of insurer claims handling practices is necessarily informed by court interpretations of policy language.  However, the issues raised by [insurer's] complaints implicate other questions concerning such matters as structural engineering, residential construction, and premium rating.  TDI can better address, at least initially, these fact-based questions and apply its regulatory expertise and historical perspective to these issues.

86 S.W.2d at 272.

equipment and services violated the Sherman Act. *Id.* at 419. In response, the defendant argued that it was immune from antitrust laws because state regulations "compel[ed] it to charge certain rates and employ certain marketing practices." *Id.* at 422. The Fifth Circuit found that the defendant was not immune because "[n]o state statute, case, regulation, or ruling has been cited as suggesting even remotely that the acquiescence [of the agencies] in the asserted tying arrangements [was] the product of any coherent state policy." *Id.* at 424. Crucially, the Fifth Circuit did not hold that the primary jurisdiction doctrine was inapplicable because there was no statute or regulation on point, but because the lack of any relevant statute or regulation directly governing the defendant's conduct meant that defendant could not claim immunity from antitrust laws. *Id. Litton Systems* is inapposite here. Progressive does not claim to be immune from Plaintiff's claims under the limited state action doctrine. WCTL reports are used by multiple insurers in Texas, and this putative class action highlights the need for uniform rules regarding the methodology for creation of the reports. The experts at TDI are well-equipped to make this threshold determination. The Court again concludes that referring the case to TDI furthers the purposes of the primary jurisdiction doctrine.

### B.   Exceptions to the Primary Jurisdiction Doctrine

Plaintiff next argues, for the first time, that even if the primary jurisdiction doctrine could apply here, Plaintiff's claims fall within two established exceptions

10

to its application.  As a threshold matter, this argument could have been raised previously and is therefore an inappropriate basis for reconsideration.[20]  In an abundance of caution and for the sake of clarity, the Court will nevertheless briefly address this new argument.

The Texas Supreme Court has recognized two exceptions to the primary jurisdiction rule: "(1) Where the issue is one inherently judicial in nature . . . the courts are not ousted from jurisdiction, unless the Legislature, by a valid statute, has explicitly granted exclusive jurisdiction to the administrative body. . . . (2) The primary jurisdiction does not apply when the administrative agency is powerless to grant the relief sought and has no authority to make incidental findings which are essential to the granting of the relief."  *Lake Country Estates, Inc. v. Toman*, 624 S.W.2d 677, 681 (Tex. App.—Fort Worth 1981) (citing *Foree v. Crown Central Petroleum Corp.*, 431 S.W.2d 312, 316 (Tex. 1968)) (internal quotation marks and citations omitted).  Neither exception applies here.

---

[20]    *See, e.g.*, *Banister v. Davis*, 140 S. Ct. 1698, 1703 "courts will not address new arguments or evidence that the moving party could have raised before the decision issued."); *Gleason v. Markel Am. Ins. Co.*, 774 F. App'x 203, 204 (5th Cir. 2019) (finding district court did not err in refusing to consider new arguments on motion for reconsideration); *In re La. Crawfish Producers*, 852 F.3d 456, 462 (5th Cir. 2017) (same); *LeClerc v. Webb*, 419 F.3d 405, 412 n.13 (5th Cir. 2005) (same).

Plaintiff attempts to recast this case as a simple claim for breach of contract and conspiracy, arguing that these are "inherently judicial" questions.[21]  Plaintiff's argument is not persuasive.  The parties do not dispute the relevant facts, the governing law, or the terms of the contract at issue.  Rather, this case turns on complex statistical analyses that are not "inherently judicial" and are better assessed by TDI.  *See Beacon Nat. Ins. Co.*, 86 S.W.2d at 272 ("While courts alone are authorized to construe written contracts and adjudicate rights thereunder, this case involves many more complex issues than simple contract interpretation. . . . the issues raised by [insurer's] complaints implicate other questions concerning such matters as structural engineering, residential construction, and premium rating.  TDI

---

[21]     Plaintiff argues this case is analogous to other cases in which courts have applied the "inherently judicial" to the primary jurisdiction doctrine.  *See* Motion at 11-12 (citing *Dolenz v. Sw. Bell Telephone Co.*, 730 S.W.2d 44, 44 (Tex. App.—Houston [14th Dist.] 1987); *Mitz v. Teas State Bd. of Veterinary Med. Examiners*, 278 S.W.3d 17, 23 (Tex. App.—Austin 2009); *Manchester Terminal Corp. v. Texas TX Marine Transp., Inc.*, 781 S.W.2d 646, 651 (Tex. App.—Houston [14th Dist.] 1981)).  None of these cases involved claims predicated on a factual issue within the expertise of an agency and accordingly are not persuasive here.  At issue in *Dolenz* was whether a plaintiff had to exhaust his administrative remedies before bringing tort claims against a telephone company.  730 S.W.2d at 45.  *Mitz* involved claims that the Texas State Board of Veterinary Medical Examiners' regulation of equine dentistry was unconstitutional.  The plaintiff in *Manchester* asked the court to determine whether certain emissions constituted trespass or nuisance, but did not challenge defendant's environmental permits or ask the court to "make a determination regarding an acceptable level of emissions of air contaminants."  781 S.W.2d at 650.

12

can better address, at least initially, these fact-based questions and apply its regulatory expertise and historical perspective to these issues.").

Nor is TDI powerless to grant the relief sought. Plaintiff argues that the agency is powerless to award him money damages on his common law claims. This overstates the issue referred to TDI. The Court has referred to TDI only the predicate factual question of the validity of the WCTL methodology, an "incidental finding[] which [is] essential to the granting of the relief." *Lake Country Estates*, 624 S.W.2d at 681. As discussed in Section III.A, *supra*, TDI certainly has the authority to resolve that question. Plaintiff may proceed with his common law claims once TDI has answered the threshold question of whether the WCTL methodology is valid.

## C.    **Balancing Test**

Plaintiff argues that the Court committed manifest error in failing to perform a balancing test before staying the case. Plaintiff claims that the Fifth Circuit in *Occidental Chemical Corporation v. Louisiana Public Service Commission*, 810 F.3d 299 (5th Cir. 2016), required courts to balance the benefits of agency determination with the delay and cost that seeking such a determination would cause the parties in application of the primary jurisdiction doctrine.[22] Plaintiff goes on to

---

[22]    Motion at 20-21 (citing *Occidental Chem. Corp. v. Louisiana Pub. Service Commission*, 810 F.3d 299, 309-10 (5th Cir. 2016)).

argue that, had the Court performed this balancing test, it would have found the delay and expense of staying the case outweighed any benefits of referral to TDI.

Plaintiff failed to raise this issue before the Prior Order, and it is therefore an inappropriate basis for reconsideration.[23]  Nevertheless, the Court briefly addresses this argument.

*Occidental Chemical* teaches that courts invoking the doctrine of primary jurisdiction consider the likely benefits of agency referral and weigh those benefits against any prejudice or costs that may accrue to the parties as a result of agency referral. 810 F.3d at 302 ("a district court with subject matter jurisdiction may, under appropriate circumstances, defer to another forum, such as an administrative agency, which also has non-exclusive jurisdiction, based on its determination that the benefits of obtaining aid from that other forum outweigh the need for expeditious litigation.").  *Occidental Chemical* does not require that, in performing this balancing test, courts must explicitly weigh every conceivable harm or inconvenience, including those not mentioned by the parties.  *See RPV, Ltd. as Trustee for Village Trust v. Netsphere, Inc.*, 771 F. App'x 532, 536 (5th Cir. 2019) (arguments not raised are generally deemed waived).  In opposing Progressive's motion to stay the case, Plaintiff never argued that referral to TDI would harm him

---

[23]     *See, e.g.*, *Banister*, 140 S. Ct. at 1703; *Gleason*, 774 F. App'x at 204; *In re La. Crawfish Producers*, 852 F.3d at 462; *LeClerc*, 419 F.3d at 412 n.13 (5th Cir. 2005).

14

in any way.[24]  Additionally, the merits of the balancing test weigh in favor of agency referral because there are considerable benefits to TDI's input in this putative class action.  Referring to TDI the question of the validity of the WCTL methodology allows for complex statistical questions to be answered by experts and the creation of uniform and consistent rules, which will inform the legal issues Plaintiff seeks to apply broadly to possibly hundreds of class members.  The Court did not commit manifest error in weighing the benefits and harms of agency referral.

## IV.    **CONCLUSION**

The Court did not commit manifest error in concluding in the Prior Order that TDI has jurisdiction to determine the validity of the WCTL methodology, that referral to the agency would further the purpose of the primary jurisdiction doctrine, and that established exceptions to the primary jurisdiction doctrine are inapplicable here.  The Court also did not commit manifest error in balancing the benefits and harms of agency referral in its Prior Order.  For the foregoing reasons it is

**ORDERED** that Plaintiff's Motion is **DENIED**.  It is further

**ORDERED** that on or before **November 19, 2020**, Plaintiff must file with the Texas Department of Insurance an administrative complaint against Progressive based on Progressive's use of the WCTL methodology to value Plaintiff's vehicle.

---

[24]    *See* Plaintiff's Response in Opposition to Defendant Progressive's Motion to Dismiss [Doc. # 33].

P:\ORDERS\1-2020\536Reconsideration.docx  201021.0806

Plaintiff shall file with the Court on or before **November 30, 2020** a status report attaching a copy of his administrative complaint against Progressive.  Plaintiff's failure to timely file an administrative complaint against Progressive or to file a copy of any such complaint with the Court will result in his claims being dismissed without prejudice.  It is further

**ORDERED** that Plaintiff and Progressive shall submit a joint status report regarding the progress of Plaintiff's administrative complaint and any rulings by TDI every three months thereafter.

**SIGNED** at Houston, Texas, this 21st day of **October, 2020**.


_____
NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE

P:\ORDERS\1-2020\536Reconsideration.docx  201021.0806